Newbery *v.* Garland.

[KINGS GENERAL TERM, February 13, 1860. *Lott, Emott* and *Brown,* Justices.]

———•◦•———

## ELIZABETH J. NEWBERY *vs.* JOHN R. GARLAND.

In an action to recover damages for fraud and deceit on a sale of stock to the plaintiff, by the defendant through one H. as his agent, and to enforce the plaintiff's lien as vendor upon the land conveyed by her in payment for such stock, it appeared that H. acted only as the agent of the defendant; that the stock purchased by the plaintiff was in fact purchased of the defendant, and that the land conveyed by the plaintiff was received by H. for the defendant, and subsequently, and before suit brought, conveyed to the latter. *Held* that H. was not a necessary party.

An action brought by a married woman, for fraudulent representations, whereby the plaintiff was induced to sell, and part with, certain lands of which she was seised to her separate use, and in which she had a separate estate, and with this separate property to purchase certain worthless stock,

relates to her separate estate, and is properly brought by her alone, without joining her husband.

Where a party, through the fraud and deceit of another, has sold and conveyed land to the latter, in exchange for worthless stock, he may maintain an action to recover damages for the fraudulent representations whereby he was induced to enter into the contract, without rescinding the contract or restoring the property which he has received under it.

Where the complaint, in such an action, stated a number of representations made by the defendant, as to the property and condition of the company with which he was connected, and as to the value of its stock, and charged that these representations were false, to the knowledge of the defendant, and that they were made with intent to defraud the plaintiff, to induce her to believe that the stock was of great value, and to part with her real estate in exchange for certain shares held by the defendant; and that such representations were uttered in published reports and statements of the condition and property of the company, made and signed by him as one of its officers, and generally and publicly circulated and advertised; *Held* that the action would lie, although the false representations were published to the world, and not made in the course of the dealings with the plaintiff; the defendant being privy to the contract made by the plaintiff, and interested in the sale which was induced by his false representations.

Although it is not alleged in the complaint, in terms, that the defendant's representations were read by, or came to the knowledge of, the plaintiff, yet if it is alleged that she was induced by these representations to purchase a certain number of shares of the stock, and to give in exchange for them a conveyance of her lands, this is sufficient; inasmuch as it involves the knowledge of the defendant's statements by the plaintiff, and connects her contract, and subsequent loss, with those statements, as effect and cause.

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The complaint alleged that on the 16th day of October, 1854, and thenceforth down to the 5th of April, 1855, the plaintiff, the wife of William B. Newbery, was seised and possessed in her own right, to her own sole and separate use, and as and for her own sole and separate property, of certain real estate in the county of Richmond, particularly described. That in and during the year 1854 the defendant was one of the directors and officers, to wit, vice president, and was also engineer and manager, of a certain incorporated company called the Winifrede Mining and Manufacturing Company, duly incorporated under the laws of Virginia. That he had the exclusive charge, management and

Newbery *v.* Garland.

control of divers mines of coal and estates, the property of the company, situated in Virginia, and resided thereat, and was acquainted therewith, and with the value and capabilities of the said mines and estates, &c. ; and that he well knew that the company was not a safe and profitable undertaking, but the contrary ; and that the shares and stock of said company were of no actual value. That in January, 1854, he, the defendant, holding and being interested in the shares or stock of the company to a very large amount, and intending to defraud, deceive and injure the public, and to cause it to be publicly advertised and represented contrary to the fact, that said company was likely to be a safe and profitable undertaking, and also to deceive and defraud the public who might become purchasers of the shares or stock of the company, and in particular of the shares or stock which he held, and was interested in, and to induce them to become such purchasers, falsely, fraudulently and deceitfully procured and caused to be publicly made known and advertised, in and by a certain report made and issued or caused to be made and issued, by him the defendant, as such officer and director, and addressed by him as engineer, as aforesaid, to the stockholders of the company, and distributed among them, divers false and fraudulent statements, tending to induce the public to become such purchasers. These statements were particularly set forth, and their falsity alleged, and the defendant's knowledge of their falsity. It was then alleged that besides the aforesaid representations, the defendant had, at divers other times subsequently, made other false, fraudulent and deceitful representations in the premises, and in particular, in or about the month of February, 1855, did falsely, fraudulently and deceitfully, and with intent as aforesaid, publish, advertise and report that the said Winifrede Mining and Manufacturing Company was about to be amalgamated with a certain other company called the Kanawha Salt Company, on advantageous terms, to wit, terms guaranteeing a dividend of full seven per cent on the stock of the former company ; which reports were false and fraudulent, and

made with the express intent to defraud the plaintiff, and to induce her to believe that the shares of the company were of great value, the same being then of no value; and especially to induce her to complete for the benefit of the defendant the sale of her said property, then pending. That on the 16th of October, 1854, the defendant then holding and being interested in a large number of shares of the said company, and knowing the same to be of no value, but being desirous of selling or exchanging the same for valuable property of other persons, to be deceived and induced to become purchasers thereof, by such false, fraudulent and deceitful representations, did covertly and deceitfully, and through the medium and agency of one Alexander J. Hamilton, employed by him, the defendant, apply to and induce the plaintiff, then seised and possessed of the premises, before described, as her separate estate, to agree to sell and to execute and deliver an agreement bearing date on the day last mentioned, for the sale of a portion of the said premises, containing over 31 acres, to the said Hamilton, then acting as aforesaid, for the consideration of $13,375, to be paid to her by the delivery and transfer by the said Hamilton to her, of 850 shares of the capital stock of the said Winifrede Mining and Manufacturing Company, to be taken at the nominal value of $27.50 for each share, one hundred shares to be delivered and transferred on the execution of such agreement, as a deposit, and the remaining 750 shares to be delivered and transferred on the 31st day of March, 1855, on the execution and delivery of the deed and delivery of possession of the premises. That the plaintiff, induced thereto, by means of the said false, fraudulent and deceitful practices and representations of the defendant, the same being continuing representations, did actually become the purchaser and bearer of the said one hundred shares of the company at the sum of $27.50 per share, the same being of no real value; and by means and in consequence of being so deceived was induced to enter into, and did enter into and execute the aforesaid agreement, and received the said one hundred shares as a deposit, pursuant to the

terms thereof. That the said one hundred shares were not the property of Hamilton, but were the property of the defendant, and were transferred and delivered to the plaintiff by him, the defendant, or by some other person or persons by his order and direction, he being interested therein, or having control thereof. That on the 5th of April, 1855, the plaintiff, by a separate agreement, agreed to sell the remainder of her said separate estate, to wit, a parcel containing over six acres, to said Hamilton, so acting as agent for the defendant, for the further price or sum of $3124. That on the last mentioned day the plaintiff, on the faith of, and in reliance upon, and induced thereto by the aforesaid false, fraudulent and deceitful representations of the defendant, the same being continuing representations, and fully believing the same to be true, and believing that the shares of the Winifrede Mining and Manufacturing Company were of the value of $27.50 per share, whereas the same were of no value, did, with William B. Newbery, her husband, in pursuance and performance of her aforesaid agreements, absolutely release and convey the premises before described to the said Alexander J. Hamilton, and did accept and receive as the consideration for the conveyance by her of the premises firstly described, the balance of the said 850 shares, mentioned in the agreement of October 16, 1854, 750 shares of the company, and no other consideration whatever, so far as regards such premises, and delivered to Hamilton, acting as aforesaid, possession or the whole of the premises firstly and secondly described. That the said 750 shares were not the property of Hamilton, but were the property of the defendant, and were transferred and delivered to the plaintiff by the latter, or by some other person or persons by his order or direction, the defendant being interested therein, and having control thereof. That the consideration given by Hamilton, for the conveyance of the premises secondly described, was not the money or property of Hamilton, but was also the money and property of the defendant; and the conveyance of all the premises from the plaintiff was so taken by Hamilton, not in his own right, but

as the agent and on account of the defendant, and on the secret trust and understanding that Hamilton should and would, when thereunto requested, convey the same to Garland. That accordingly, Hamilton and his wife, on the 16th of April, 1855, released and conveyed the whole of the premises to Garland, absolutely, for a pretended consideration of $27,000, but without any real actual consideration therefor. That the defendant thereupon became and was, and now remains, owner and in possession of the premises. That the aforesaid 850 shares of the said stock, so transferred and delivered to the plaintiff, have since been discovered by her to be, and are, and were, at the time of such transfer and delivery thereof, wholly worthless, and of no value whatsoever; whereby the plaintiff did in fact receive no consideration whatsoever for the conveyance by her of the premises firstly described; and hath by the said false, fraudulent and deceitful acts and representations of the defendant wholly lost and been defrauded of the whole of the purchase money thereof, to wit, $23,375, and also of the subsequent rents, issues, profits and income of the premises, and hath thereby and otherwise been greatly injured and damaged in the premises, to the amount of $50,000. The plaintiff also claimed that she was entitled to a lien upon the premises conveyed by her, for the unpaid purchase money, and for all the other damage sustained by her, and to have such lien enforced for her benefit, by and under the direction of the court. The plaintiff demanded judgment for $50,000 damages, and for costs, and that it might be declared and decreed that she was entitled to a lien on the premises conveyed, for the sum of $23,375, the unpaid purchase money; also for the subsequent rents and profits, and for the damages sustained by her; and that such lien might be enforced for her benefit; and for an injunction and receiver.

To this complaint the defendant demurred, on the ground that there was a defect of parties; that William B. Newbery should be joined as plaintiff or defendant; and that Alexander J. Hamilton should be joined as defendant. Also, on the

Newbery *v.* Garland.

ground that the complaint did not state facts sufficient to constitute a cause of action.

The demurrer was argued at a special term, before Justice BROWN, who overruled the same, with costs, but with liberty to the defendant to withdraw the same and to put in an answer, on payment of costs.

*A. H. Green,* for the appellant.

*Henry Whittaker,* for the plaintiff.

*By the Court,* EMOTT, J. The demurrer in this case was taken to the whole complaint, and it was properly overruled if the complaint can be sustained in either of two aspects which it presents. We are of opinion that it states a good cause of action for fraud or deceit, and shall not therefore advert to the other branch of the case.

There are two grounds of demurrer stated; one a defect of parties, and the other that there is no cause of action. The defendant claims that Alexander J. Hamilton should have been made a defendant with him. It sufficiently appears, from the complaint; that Hamilton acted only as the agent of the defendant, that the stock purchased by the plaintiff through Hamilton was in fact purchased by the defendant, and that the land conveyed by the plaintiff in payment was received by Hamilton for the defendant, and subsequently, and before the suit, conveyed to the latter. There is, therefore, no reason disclosed for making Hamilton a party to the present action.

The objection that the plaintiff's husband should have joined with her in the action is equally untenable. The suit is for fraudulent representations, whereby the plaintiff was induced to sell and part with certain lands of which she was seised to her separate use, and in which she had a separate estate, and with this separate property to purchase certain worthless stock. This stock which she received for her lands is as much her separate property as they were; and whether the action con-

cerned the one or the other; whether it be regarded as brought for a fraud affecting the sale or the purchase; it equally relates to her separate estate, and is properly brought by her alone, under section 114 of the code as it now stands.

Upon the merits, the cause of action is clearly made out by the statements of the complaint. The defendant's counsel is entirely in error in supposing, if we correctly apprehend his argument, that it is necessary for the plaintiff to rescind the contract, and to restore the property which she has received under it, before she can maintain an action for the fraudulent representations whereby she was induced to enter into it. The cases which he cites, and of which *The Matteawan Co.* v. *Bentley* (13 *Barb.* 644) is a fair example, are cases where actions were brought to recover property which had been parted with, or its value. Such actions obviously cannot be maintained without a rescission of the contract under which the property was transferred, and a restoration of every thing which has been received under it. But that rule has no application to an action to recover damages for fraudulent representations or deceit in sales or purchases. The cases only need to be stated, to show the distinction.

The complaint states a number of representations made by the defendant as to the property and condition of the company with which he was connected, and as to the value of the stock which the plaintiff was induced to purchase in exchange for her lands. It charges that these representations were false, to the knowledge of the defendant, and that they were made to defraud the plaintiff, to induce her to believe that the stock of this company was of great value, and to part with her real estate in exchange for certain shares held by the defendant. It states these facts, it may be added, with a precision which is unusual in the pleadings which we see under the present system of practice. The complaint does not state that these representations were made *to the plaintiff*, in this particular no doubt following the fact. Nor does it aver expressly that the plaintiff heard, or read, or came to the knowledge of them,

which perhaps might have been alleged. The only serious question in the case which has occurred to us arises upon these features of it, although it is not pressed, in the elaborate brief submitted by the appellant's counsel. The representations which were made by the defendant are charged to have been uttered in published reports and statements of the condition and property of this company, made and signed by him as one of its officers, and generally and publicly circulated and advertised. It has been held in the court of queen's bench in England, in the case of *Gerhart* v. *Bates,* (20 *Eng. L. and E. Rep.* 130 ; 2 *Ellis & Bl.* 476, *S. C.,*) that an action will lie against an officer of a stock company who willfully publishes a false statement of its affairs, whereby another is induced to become a purchaser of its stock, although the defendant had no interest in the sale. Lord Campbell asserts that the action lies, without any privity of contract, and although the parties are entire strangers to each other. A question very similar was presented to the superior court of the city of New York, in *Cross* v. *Sackett,* (2 *Bosw.* 617,) and although the doctrine of Lord Campbell was severely questioned by eminent counsel, it was substantially accepted by that court. There, also, an action for deceit was sustained, although the defendant had no interest in the stock which the plaintiff was induced to purchase, and reaped no benefit from the contract into which he was persuaded to enter. The doctrine of these cases, and of some others in the English courts to which I shall presently advert, is that a statement made to the public and designed to influence the public, is designed to influence every individual who is interested in its subject matter. If any person is induced to part with his property, or purchase that to which the statement refers, by what it contains, and which would naturally have that influence, the parties who have put it forth are responsible if it be false and fraudulent. Their responsibility is not the less because their representations are addressed to and may influence others besides the plaintiff. They are addressed to him among others, and if designed to mislead, and

are capable of doing so, they are in effect made to him, if they reach his knowledge, and influence his action. The cases in which it has been held that a party is liable who makes a false and fraudulent representation that another person is worthy of credit, although such recommendation is not addressed to nor intended to defraud any person in particular, proceed upon a principle which will sustain the present action. Wherever there is deceit, designed to injure, and consequent damage, the common law will give an action. (*Addington* v. *Allen*, 11 *Wend.* 375. *Com. Dig., Action on the case, Deceit, A. I.*)

It is a question of evidence in such cases what proof will warrant the conclusion that the defendant fraudulently intended and did induce the plaintiff to make the purchase of stock. Such a question cannot be disposed of upon demurrer. The supreme court in the first district seem to have held substantially the same doctrine as the superior court on these points, in *Cazeaux* v. *Mali*, (25 *Barb.* 578.)

It is not necessary, however, to go as far as the courts have gone in these cases, to uphold the present complaint, since the defendant in this action was privy to the contract made by the plaintiff, and interested in the sale which was induced by his false representations. The case of *The National Exchange Co.* v. *Drew* (32 *Eng. Law and Eq. p.* 1) is in this respect more nearly analogous to the present. That was a case in the house of lords, and the principles upon which their judgment proceeded are very material if not conclusive upon the present question. It was held, in that case, that a joint stock company would be bound by the fraudulent statements of their directors, whereby third parties were induced to contract with them, although such statements were made in reports submitted by the directors to annual meetings of the company. A liability was admitted; the only question was whether it attached to the company, or only to its agents as individuals. In the present case the responsibility is cast upon the individual who made the representations, and the same individual profited by them. Another still more recent case in the house

Newbery *v.* Garland.

of lords is *Bagshaw* v. *Seymour*, reported in 4 *Com. B. Rep.
N. S.* 873, where an action was maintained against a chair-
man of a company who had procured its shares to be put on
the stock list of the exchange, by falsely stating in a pros-
pectus, and in a letter to the committee of the stock exchange,
that its capital was paid up. The action was by a person who
had been induced to buy some of the shares. The counsel for
the plaintiff in error declined to argue the case, and the judg-
ment seems to recognize, as law, the reason given in the printed
case of the defendants in error for affirming the judgment,
that such a fraudulent representation to the public affords as
good a ground of action to a person injured thereby, as if it
were made to such person directly. Upon principle as well
as upon these authorities, we see no reason why this action
should not lie, for the false representations alleged to have
been made by the defendant with the fraudulent purpose
charged, although they were published to the world, and not
made in the course of the dealings with the plaintiff.

The question of the sufficiency of the allegations of the
complaint, as to the connection between these statements and
the plaintiff's conduct as cause and effect, is merely a ques-
tion of pleading, and in this respect the plaintiff's complaint
is sustained by the cases in the queen's bench and the supe-
rior court, to which I have adverted. Although it is not al-
leged, in terms, that the defendant's representations were read
by or came to the knowledge of the plaintiff, yet it is alleged
that she was induced by these representations to purchase a
certain number of shares of the stock of this company, and to
give in exchange for them a conveyance of her lands. This
involves the knowledge of the defendant's statements by the
plaintiff, and connects her contract and subsequent loss with
those statements, as effect and cause. This is sufficient upon
principle, and such a pleading is sanctioned by the authorities
which I have cited.

The order appealed from is affirmed with costs.

[KINGS GENERAL TERM, February 13, 1860. *Lott*, *Emott* and *Brown*, Justices.]