BUTT *vs.* CAMERON.

A cause of action for alleged tortious acts of the defendant, as a director and president of a bank in South Carolina, cannot be joined in the same complaint with one for an alleged liability of the defendant as a stockholder under a statute of South Carolina.

Where such complaint does not show, or state facts sufficient to show, that the plaintiff as a bill holder was injured or damaged by the alleged acts of malfeasance and misfeasance of the defendant, as a director and as president, &c. it does not state facts sufficient to constitute a cause of action; especially where it does not even state that the plaintiff was the holder of the bills or bank notes, or any of them, when the alleged acts of malfeasance and misfeasance were committed.

A count in a complaint, alleging that the defendant is a stockholder in a bank located in South Carolina, (without stating the amount of his stock,) and that under and by virtue of a law of that state, the defendant is liable to the creditors of said bank, as such stockholder, in the sum of double the amount of his stock, &c., does not state a valid cause of action; the fair inference from the complaint, and from the law as far as stated, being that the liability of the defendant as a stockholder can only be enforced in the courts of South Carolina.

APPEAL by the defendant from an order made at a special term, overruling a demurrer to the complaint.

The plaintiff alleged in his complaint, first: That under and by virtue of a law of the state of South Carolina, enacted and of force on a date previous to the fifth day of September, 1853, and yet in force, there exists a corporation doing business in the town of Chester, in said named state, and known and incorporated as the Bank of Chester. That under and by virtue of the chartered privileges conferred by the statute above referred to, the parties concerned duly organized the banking corporation aforesaid, procuring and appointing a place of business, electing a board of directors and a president thereof, and by other acts signifying and denoting their acceptance of the charter so granted, and the privileges therein and thereby conferred. That in pursuance of the objects and purposes so indicated, the aforesaid Bank of Chester, so organized and established, received deposits of moneys, issued their checks, bills of exchange, and promissory notes payable on demand, and did and performed divers other transactions and things within the purview and purpose of the said act of incorporation, and the organization, as before stated, thereunder had. That on or before the fifth day of January, 1855, the defendant was duly and legally constituted one of the directors of the said Bank of Chester, and was likewise, on or before the said fifth day of January, 1855, duly and legally constituted the president of the said board of directors, in which capacity he has since continued to act, intrusted with the general supervision and direction of the affairs of said bank, thereby becoming and being a trustee for the interest of the parties immediately concerned, and more especially for the benefit and protection of the lawful creditors of every kind and description of said bank. That under the direction of the president and board of directors, the said Bank of Chester made, or caused to be made and issued, or caused

to be issued for valuable consideration, a large number of its promissory notes for circulation as money, made payable on demand, and done in pursuance of the chartered privileges aforesaid; and that said notes were issued in sums of five, ten, twenty, fifty, and one hundred dollars each, as occasion required, and bearing date on various days subsequent to the said fifth day of September, 1853, and before the bringing of this suit. That at a period subsequent to the issue of the notes aforesaid, to wit, on or about the first day of January, 1862, the said Bank of Chester suspended payment of its said notes; and that said bank now continues, and has since continued, in a state of notorious and publicly known suspension as to the said issues, and as to all others of the liabilities of the said bank. That the said Bank of Chester was, previously to the first day of May, 1861, and for some time thereafter, in a good and solvent condition as to its liabilities in every form, and especially as to its liabilities on its promissory notes aforesaid. That since the period aforesaid, the said Bank of Chester has become insolvent and utterly unable to pay its liabilities, and is now so insolvent and utterly unable to pay. That the plaintiff has at various times since the said fifth day of January, 1855, become the lawful holder and owner, for valuable consideration and in the usual course of business, and is now such lawful holder and owner, of a large amount of the notes of the said Bank of Chester, to wit, of nine thousand six hundred and thirty dollars. That the insolvency of the said Bank of Chester was occasioned by numerous and various acts of willful malfeasance and misfeasance of the defendant aforesaid, in his said capacity and position of president. That among other such acts of willful malfeasance and misfeasance, the said Bank of Chester heretofore, to wit, at various times since the said first day of May, 1861, under the order and direction, or by the approval of the said defendant, as president thereof, dis-

Butt *v.* Cameron.

posed of large sums of the good, valid, and valuable assets of the said bank for the notes, bills, bonds, or other forms of credit of the so-called Confederate States of America, in contravention of public policy and the laws and constitution of the United States, and in violation of the rights and interest of the creditors of said bank. That further, among the acts of willful malfeasance and misfeasance aforesaid, the said Bank of Chester heretofore, to wit, at various times since the said first day of May, 1861, under the order and direction, or by the approval of the said defendant, as president thereof, incurred heavy liabilities to third and outside parties, dealing in the character of depositors, by receiving from said parties or depositors the notes and other forms of credit of the so-called Confederate States of America, and in many cases repaying said deposits with good, lawful and valid assets and claims of the said bank. That among the acts of willful malfeasance and misfeasance aforesaid, the said Bank of Chester heretofore, to wit, at various times since the said first day of May, 1861, under the order and direction of the said defendant, as president thereof, or with his approval, made large and at the same time unlawful contracts and agreements with other parties not known to the plaintiff; and that in many cases these unlawful contracts and agreements were settled by the use of the good, valid and valuable assets of said bank, under the order and direction of the defendant, as president thereof, or by his approval. That further, among the acts of willful malfeasance and misfeasance aforesaid, the said Bank of Chester heretofore, to wit, at various times since the said first day of May, 1861, under the order and direction of the said defendant, as president thereof, or by his approval, caused to be sold large sums of the assets of said bank, at credit in the banks of New York, London, Liverpool and elsewhere, taking in exchange therefor the notes, bonds, or other credits of the so-called Confederate States of America.

That further, amongst the acts of willful malfeasance and misfeasance aforesaid, the said Bank of Chester heretofore, to wit, at various .times since the said first day of May, 1861, under and by the order and direction of the said defendant, as president thereof, or by his approval, took and received in exchange for the good promissory notes, bills of exchange, and other forms of good and solvent indebtedness to said bank, in large sums thereto due and payable, the notes or other forms of credit of the so-called Confederate States of America, to the detriment and injury of the *bona fide* creditors of said bank, and of this plaintiff as among said creditors. That further, among the acts of willful malfeasance and misfeasance aforesaid, the said Bank of Chester heretofore, to wit, at various times since the said first day of May, 1861, under and by the order and direction of the said defendant, as president thereof, or with his approval, disposed of gold and silver coin, and other valuable assets of said bank, without receiving therefor good and valuable consideration and security, in contravention of public policy and the laws of the land, and in utter violation of the rights and interests of the *bona fide* creditors of said bank. That further, among the acts of willful malfeasance and misfeasance aforesaid, the said defendant heretofore, to wit, at various times since the said first day of May, 1861, employed valuable assets of said Bank of Chester in purposes of speculation for his own individual gain and benefit, or permitted to be so employed by other directors or managers of said bank, in the violation and disregard of his obligations and duties as president thereof, and as trustee aforesaid, whereby the said bank was greatly damaged and its valuable assets wasted, to the detriment, loss and injury of the *bona fide* creditors of said bank. That the said defendant, at various times since the said first day of May, 1861, has done, or caused to be done and allowed, the various acts of willful malfeasance and

misfeasance hereinbefore recited, and many others not named, in contravention of public policy and the laws of the land, and in utter violation and disregard of his duties, and obligations as president of said Bank of Chester, and as trustee for the interest, benefit and protection of said bank and the creditors thereof, whereby the said Bank of Chester has become totally and ruinously insolvent, its valuable assets wasted and destroyed, and the said bank thereby rendered unable to pay its creditors and the lawful demand to be made there against.

Second. That the defendant is a stockholder in the said Bank of Chester, and that under and by virtue of a law of the state of South Carolina aforesaid, the said defendant is liable to the creditors of said bank as a stockholder thereof, in the sum of double the amount of his said stock, or some other proportionate sum. That the specific amount of the stock so held by the said defendant is unknown to the plaintiff; but that in such sum or amount, whatever it may be, the said defendant, by reason of the matter hereinbefore set forth, and of his position as stockholder aforesaid, and by virtue of the said named law, is liable to the plaintiff as creditor of the said bank. Wherefore, and by reason of the unlawful acts thereinbefore recited, alleged and complained of against the said defendant, and of others not therein recited, and by reason of the position of the said defendant as stockholder aforesaid, the defendant has become and is liable to the plaintiff for and upon the notes of the said Bank of Chester now held by the plaintiff, to wit, for the sum of nine thousand six hundred and thirty dollars, together with the interest thereupon accrued and to accrue since the first day of January, 1862, the date of the suspension of payment of the said bank, as before set forth. Wherefore the plaintiff demanded judgment against the defendant for the sum of nine thousand six hundred and thirty

dollars, with interest thereupon from the said first day of January, 1862, together with the costs of this action.

The defendant demurred to the plaintiff's complaint, and for causes of demurrer specified the following:

First. That in the said complaint several causes of action have been improperly joined; one being a cause of action on contract, wherein the defendant is sought to be made individually liable as a stockholder of the Bank of Chester, in the state of South Carolina, under an alleged law of the said State, to the creditors of the said bank, in the sum of double the amount of his stock or some other proportionate sum; and another being a cause of action, wherein the said defendant is sought to be made liable as a director and president of the said bank, for malfeasance in the management of the affairs of the said bank.

Second. That the said complaint does not state facts sufficient to constitute a cause of action.

The cause coming on for trial at special term, in its order, on the issues of law joined by the demurrer, it was ordered that the demurrer be overruled, without prejudice to the defendant, to move within twenty days to compel the plaintiff to elect by which of the two distinct causes of action he will abide, and to strike out all not necessary to that; with leave to defendant to answer within ten days after the decision of the motion.

The defendant appealed.

*Jos. H. Dukes*, for the appellant.

*J. S. Winter*, for the respondent.

*By the Court*, SUTHERLAND, J.  I understood the counsel of the plaintiff to concede, on the argument, that there was a misjoinder of causes of action in the complaint. There plainly was; for the first cause of action which the complaint undertakes to state is plainly for certain alleged

tortious acts, and the second is for an alleged South Carolina statute liability, as a stockholder, which certainly cannot be viewed as an action for a tort.

Nor can it be said that the two pretended causes of action arose from the same transaction or transactions, connected with the subject of the action.

But the demurrer for misjoinder is quite immaterial in this case, for it is plain, I think, that the second ground of demurrer—that the complaint does not state facts sufficient to constitute a cause of action—is well taken.

The first count, or that part of the complaint which undertakes to state a cause of action against the defendant as a director, and as president, &c., more especially as president, &c., does not state facts sufficient to constitute a cause of action, for the reason, among others, that it does not show, or state facts sufficient to show, that the plaintiff as a bill-holder was injured or damaged by the alleged acts of malfeasance and misfeasance of the defendant. The complaint does not even state that the plaintiff was the holder of the bills or bank notes, or any of them, when the alleged acts of malfeasance and misfeasance were committed. From aught that appears on the face of the complaint, the plaintiff bought the bills or bank notes of which he is the holder, on speculation, with a knowledge of all the alleged wrongful acts. Besides, I am not prepared to say that the plaintiff could bring the action against the defendant without any presentment of the bank bills or notes for payment.

Moreover, I am not prepared to say that the acts alleged in the complaint to be acts of malfeasance and misfeasance, are shown by the complaint to be or to have been acts of malfeasance or misfeasance.

It can hardly be contended that the other count or part of the complaint states a cause of action. The South Carolina law is not stated so as to show the liability of the defendant by it. The fair inference is not that the

plaintiff, as the holder of the bank notes or bills, is a creditor within the meaning of the South Carolina act, as far as it is stated.

The amount of stock held by the defendant is not stated, and is conceded in the complaint to be unknown; and the fair inference from the complaint, and from the law as far as stated, is, that the liability of the defendant as a stockholder could only be enforced in the courts of South Carolina.

The order appealed from should be reversed, with costs, and there should be judgment for the defendant on the demurrer, with costs.

[NEW YORK GENERAL TERM, January 4, 1869. *Clerke, Sutherland* and *Geo. G. Barnard,* Justices.]