Ingraham, J. [Cocurring.]
I concur with the chief judge on the ground stated by him, that as Cat-low was a party to the agreement under which the stock was issued, and received the benefit of such agreement, he would not be entitled to bring such an action as the present one, and that plaintiff’s title to the stock he owns and on which he brings his action, having come through Catlow, he can have no greater right as stockholder than his assignor had.*
Truax, J., dissented.
*441 Note on Liability for Illegal or Exaggerated Stock.

Liability for issuing stoclc receiving inadequate payment.

Liability independent of statute. The following cases show the line of decision on the question of liability independent of statute.
The capital stock of a corporation is a trust fund for the payment of its debts, and the directors of the corporation, who are the trustees of the fund, will not be permitted to waste it, either directly by releasing subscribers from the obligations created by their subscriptions, or by receiving payment for stock, issued without a subscription, in the form of property or services, at more than a sum which a faithful trustee in the honest exercise of his judgment might deem the just value thereof. Thus it was held that a receiver, who represents both the corporation and its creditors, may maintain an action against directors who have issued stock in exorbitant quantities in payment under a construction contract with the company in which they are personally interested, to account for the difference between the nominal amount of the stock, and the actual value of the work rendered. Van Cott v. Van Brunt, 2 Abb. N. C. 283.
Tins decision was reversed by the court of appeals on the ground that the directors had a right to issue stock to a construction con- , tractor at its market value, even though that was greatly below par, and that the transaction in suit being for the best interest of the corporation, there was no breach of duty on the part of the directors. Van Cott v. Van Brunt, 82 N. Y. 535.
When a party projects and publicly promulgates the scheme of a joint-stock corporation ; when he causes the usual books to be opened, and allows or causes the inscription of a person as an owner of an interest to a definite amount and value therein, which is false within his knowledge; when he embodies such false statement in a certificate of *442 stock directly issued and of the same effect as if issued by himself; when he accompanies that certificate by a written power, authorizing a transfer at large by the party to whom he has given the certificate; when that representation induces an innocent person to advance his money;—his own act creates a privity of contract, and he must be held to be responsible to any one who has been deceived. Cross v. Sackett, 6 Abb. Pr. 247, 272.
The issuing of stock certificates by the trustees of a corporation with the attendant power of attorney endorsed .thereon, amounts to a representation that the party named in it is entitled to an interest proportionate to the whole stock, in a money capital or in property equivalent substantially'to a money capital of the nominal amount of its entire capital stock. There is an implied engagement for the truth of such representations. Cross v. Sackett, 6 Abb. Pr. 247, 262.
Four projectors of a corporation having obtained a charter, by which their capital was declared at £20,000, to be divided into 400 shares, before any subscriptions had been had, divided the entire stock among themselves, and accounted to the corporation for £12,000 only. They afterwards disposed of their shares. On a bill filed against them by the corporation,—Held, that although at the time of the acts complained of they were the only persons interested in the company, yet it -was not competent for them to take the shares without paying the full consideration, and they should be compelled to account to the company for the difference. Society for Illustration of Practical Knowledge v. Abbott, 2 Beav. 560. See also In re Ambrose Lake Tin Mining Co., L. R. 14 Ch. Div. 390.
In the absence of any limitation by statute, or in the charter of a company, its officers may receive property in payment of a subscription, and such payment will exonerate the subscriber. East N. Y. & Jamaica R. R. Co. v. Lighthall, 5 Abb. Pr. N. S. 458. To same effect., Williams v. Western Union Teleg. Co., 9 Abb. N. C. 443.
There is no principle of public policy which condemns an agreement between parties about to form a corporation, by which the capital stock is to be represented by property which they severally contribute at a valuation agreed upon between themselves. But otherwise, it seems, where the transaction is shown to be a device to defraud the public by putting valueless shares on the market, having an apparent basis only. Lorillard v. Clyde, 86 N. Y. 384.
On the question of the good faith of trustees in issuing the capital stock in exchange for properly, they may show representations made to them by experts and others competent to judge, as to the value of the property; but it is for the jury to determine whether they in good *443 faith acted and relied on such opinions believing the property to be of the value represented. Brockway v. Ireland, 61 How. Pr. 372.
The fact that trustees act fraudulently in issuing stock in exchange for property is sufficiently shown by proving (1) that the stock issued exceeded in amount the value of the property, and (2) that the trustees deliberately and with knowledge of the real value of the property, overvalued it, and paid in stock for it an amount which they knew was in excess of its actual value. The value must be determined, having respect to the circumstances and nature of the property; and the scienter and guilty action maybe proved either directly or inferred from circumstances. Douglass v. Ireland, 73 N. Y. 100.
As to evidence justifying a finding that an exchange of the entire capital stock of a corporation for patents was in good faith and valid, see Lake Superior Iron Co. v. Drexel, 90 N. Y. 87; Draper v. Beadle, 16 Weekly Dig. 475.
As to liability of bona, fide holders of stock issued as full paid, see Brant v. Ehlen, 59 Md. 1.
The statutory liability rests of course on different grounds. For an introduction to the principles applicable to such statutes, see note to Chase v. Lord, in 6 Abb. N. C. 258.
As to the general nature and extent of liability of trustees or directors under statutory provisions of the different states, see Thompson on Liability of Officers, &c., of Corporations, 431 et seq.
• For recent article on powers of officers and agents of corporations, see 17 Western, Jurist, 49, Feb. 1883.

Corporation holding its own stock.

In the absence of a statutory prohibition or any restriction in its charter, a corporation may receive its own stock in payment of debts, due upon stock subscriptions. The stock so received does not necessarily become thereby extinguished, but some manifestation of such intent on the part of the company is necessary to produce that result. City Bank of Columbus v. Bruce, 17 N. Y. 507.
Shares held by the corporation itself or in trust for its benefit cannot be voted upon, as this would virtually give the agents of the company the privilege of voting upon shares belonging to shareholders collectively, and thus diminish the authority of the latter in the management of their own company. Matter of Holmes, 5 Cow. 426; and see Morawetz on Private Corp. § 361 and cases cited.
And the corporation cannot vote on such stock, although it has been pledged by it to another to secure a loan. Vail v. Hamilton, 20 Hun, 355; affirmed, 85 N. Y. 453.
Where directors fraudulently' purchase the stock of the company with corporate funds, the remedy of a stockholder is not against the *444 company in its corporate capacity, but against the directors committing the wrong. Verplauck v. Mercantile Ins. Co., 1 Edw. Ch. 84.
As to liability as stockholder of person holding stock for benefit of the corporation itself, see Matter of Empire City Bank, 18 N. Y. 199, 226.
Statutory report. Grounds of liability may however, in some cases exist under'statutory provisions,requiring a report of the payment of capital. -
A statutory report of a corporation, which states that its entire capital has been paid in, without specifying the manner of such payment, imports that such payment was in" cash, and if in fact part of the stock was issued in exchange for property, such report is false, and will impose upon the trustees making it the statutory liability for a false report, but if the penalty is confined to reports knowingly false, bad faith or intention to deceive must be shown. Pier v. Hanmore, 86 N. Y. 95. See also Bonnell v. Griswold, 89 N. Y. 122.

Overissue of Stock.

An action may be maintained by a single stockholder against directors of the corporation who have unlawfully issued stock in excess of the amount authorized by law, and received the proceeds thereof to their own use, by reason of which the market value of plaintiQ’s stock is depreciated, although the company is not legally liable for the overissued stock. The fact that the depreciation in the market is caused by ignorance of the public as to the liability of the company, does not excuse the directors. Cazeaux v. Mali, 25 Barb. 578.
Such directors are also liable to a remote purchaser of the spurious stock. The fact that he has a remedy against his seller is no defense. lb. See also Bruff v. Mali, 36 N. Y. 200, disapproving Seizer v. Mali, 32 Barb. 76, and see Shotwell v. Mali, 38 Barb. 445.
Concealment by directors of the fact that they have largely over-issued the stock of the company, they representing that it is in a good and prosperous condition, which representations come to plaintiff, although indirectly, inducing him to purchase the stock, will sustain an action against such directors for the deceit. Cazeaux v. Mali, 25 Barb. 578, 583.
Representations in Prospectus, <6e.
A director who knowingly issues or sanctions the circulation of a false prospectus, containing untrue statements of material facts, the natural tendency of which is to mislead and deceive the community, and to induce the public to purchase its stock, is responsible to those who are injured thereby. When such a prospectus has been issued no other relation or privity between the parties need be shown except *445 that created by the wrongful act of the directors in issuing or circulating the prospectus, and the resulting injury to the purchaser. But directors who have a merely nominal interest in the corporation, never take any part in its management or business after its organization and are not shown to have known of the existence of the prospectus, cannot in the absence of proof of actual fraud, be held liable. The purchaser must show that he relied on the prospectus in making his purchase, though he need not have been influenced by that solely. Morgan v. Skiddy, 62 N. Y. 319; modifying 36 Super. Ct. (J. & S.) 152. See also Smith v. Chadwick, 46 L. T. Rep. N. S. 702.
An action for deceit by a purchaser of stock from a director of the company against the latter, may be based upon the published reports and statements of the condition and property of the company, made and signed by him as one of its officers, and generally and publicly circulated and advertised, although the sale of the stock was negotiated by an agent of the defendant. Newbery v. Garland, 31 Barb. 121.
A director cannot be held for deceit, in reference to the published cards or circulars of the company, showing the payment of its capital stock, without showing his knowledge of their falsity and intent to deceive. Such knowledge and intent cannot bo presumed but must be proven. The director will not, for the purpose of charging him with deceit, be charged with knowledge of the facts as to the payment in of the capital stock. Wakeman v. Dalley, 51 N. Y. 27; aff’g 44 Barb. 298.
The mere fact that a person is a director of a corporation is not sufficient to charge him with fraud, resting upon the publication of a prospectus, prepared by another person before the organization of the company, and of which he is not shown to have had any knowledge. Arthur v. Griswold, 55 N. Y. 400.
As to liability of directors for false prospectus, see also Thompson on Liability of Directors, &c. of Corporations, 401 et seq., and cases cited.
As to false representations by a meeting of the corporators, see Abb. Tr. Ev. 37.

Acquiescent Director.

The mere fact of being a director is not per se sufficient to hold a party liable for the frauds and misrepresentations of the active managers of a corporation. Some knowledge of and participation in the act claimed to be fraudulent, must be brought home to the person charged. Arthur v. Griswold, 55 N. Y. 400.

Secret Profits.

A director of a corporation stands in the position of a trustee, and *446 will be compelled to account to the corporation for secret profits which have come to him through a corporate transaction with a third person. European & N. A. Ry. Co. v. Poor; 59 Me. 277; S. C., Thomp. Liab. Officers of Corp. 243 and note Id. 360 and eases cited.
For article on directors’ contracts with themselves, and directors as stock speculators, see 16 Amer. Law Rev. 917, 918, Dec. 1882.

Liability of Promoters.

To hold promoters and directors with fraudulently combining to organize a company to deceive such of the public as might become stockholders, or witli fraudulently inducing a purchase of the stock, falsehood uttered with intent to deceive must be shown. Nelson v. Luling, 36 Super. Ct. [J. & S.) 544; aff’d, 62 N. Y. 645.
A director cannot, though not a promoter, make a profit out of a transaction and purchase by the promoters, which he ought as a trustee, to protect, by purchasing at a discount the obligations of the company received by the promoters in the transaction. Ex parte, Larking, L. R. 4 C. D. 577; 20 Monk Eng. 762.
For a recent article on the rights and liabilities arising through the promotion and formation of a corporation, see 16 Amer. L. Rev. 357, May, 1882.

Waiver.

Acts of a corporation which although ultra vires are not illegal per se or malum prohibitum, and only affect the interest of stockholders, may be made good as to strangers relying thereon, by the assent of the stockholders. Express assent is not necessary; acquiescence may be implied from failure -to take proper measures to avoid the act. Kent v. Quicksilver Mining Co., 78 N. Y. 159.
That stockholders by acquiescence in the course of business pursued by the directors are bound thereby as between themselves and the directors, see also Scott v. Depeyster, 1 Edw. Ch. 513, 536, and that the corporation is estopped from questioning the validity of a contract sanctioned by the stockholders, see Hotel Company v. Wade, 97 U. S. (7 Otto) 13.
Neither directors nor stockholders of a corporation can waive the provisions of a statute prohibiting its directors from being concerned in certain contracts witli the corporation. Barton v. Port Jackson, &c. Plank Road Co., 17 Barb. 397.

Stockholder's right as affected by time of purchase or complicity of seller.

A holder of the bills and notes of a bank purchased after its insolvency and with knowledge of the facts complained of, cannot bring an action against a director of the bank for malfeasance causing the *447 insolvency. Butt v. Cameron, 53 Barb. 642. To same effect, Patterson v. Baker, 6 Supm. Ct. (T. & C.) 76.
That a stockholder, acquiring his stock after the acts complained of have been committed, and deriving title thereto through one who was a party to the transaction complained of, canuot maintain a proceeding based on such transaction—was also held in Matter of Syracuse. &c. R. R. Co., 91 N. Y. 1.
' A contract which is unlawful because it provides for influencing tlie action of corporate directors for the benefit of others, and to the prejudice of their company, is not rendered valid by the fact that the contracting parties own all the corporate stock, the presumption being that the stock will subsequently become distributed among other persons to a greater or less extent. Bliss v. Matteson, 45 N. Y. 22.

 In Langdon v. Fogg, N. Y. Superior Court, Special Term, November, 1883, a demurrer was sustained to a stockholder’s complaint on behalf of himself and his co-stockholders, against the original trustees of a mining corporation to recover the difference between the nominal value of the stock, and the alleged actual value of the property for which the stock was issued, and for profits upon stock received by them.
, E. Francis Hyde, for defendants in support of the demurrer.
John Jt. O'Donnell and Grove If. Harwood, for plaintiff, opposed.
O’Gobman, J.—Plaintiff brings this action, as well on his own behalf as on behalf of his co-stockholders in the Silver Era Mining Company, against the company and its trustees, and prays for the appointment of a receiver. All the acts of the individual defendants, either in their capacity of trustees or otherwise, of which the plaintiff complains, occurred before lie obtained stock in the company, and the title to the stock he holds, is derived from the said trustees, defendants, or through Sanders, their alleged co-conspirator, to whom all the stock of the company was issued by the trustees, as is averred in the complaint, in payment for certain mining property conveyed to the company by him. The plaintiff’s title to his stock is thereforeo affected by an illegality or infirmity which may have attached to the stock at its first issue (Kent v. Quicksilver Co., 78 N. Y. 188; Hawes v. Oakland, 104 U. S. 450, 401; In re Railroad Co., 91 N. Y. 4).
*436 As to some of the material facts plaintiff’s complaint is vague and uncertain. He does not distinctly charge that the acts of the defendants, to which he objects, were fraudulent. He does not state which of the defendants received any gains or profits thereby. He does not show, in support of his own standing before the court, as representing stockholdbrs, that he has made any effort to induce the defendant trustees to accede to any just demand, nor has ho made any effort to obtain the concurrence of the other stockholders, as a body, in the action he has brought. He does not allege that he was ignorant of the transactions, which he regards as illegal, at the time he purchased his stock (Hawes v. Oakland, 104 U. S. 450, 460-1). He alleges that he is a Iona fide, holder of his stock for value, but how much stock he now holds, from whom he obtained it, or for what consideration, or how, or to what extent, he has been damaged by the alleged misconductof the defendants, does not appear.
Whether the stock purchased by the plaintiff could be regarded as “ full paid-up stock ” might be a question of law under chapter 8'8, Laws of 1853, section 1. But if it had been untruly represented to him that the stock was “ full-paid stock,” while in fact it was not so, but was comparatively worthless, and if he were induced by such representation to buy the stock and pay for it, he might have an action on his own behalf against the person by whose falsehood and deceit he had been defrauded. But this action would be inconsistent with the present action on behalf of his co-stockholders, and it would not entitle him to the appointment of a receiver as against the defendant trustees. Under these circumstances, and as the action now stands, I do not see how plaintiff could recover on the merits, irrespective of any technical defects which are alleged against it. The doctrine of the United States supreme court in Hawes v. Oakland (supra), cited with approval in Detroit v. Dean (106 U. S. 537-542), seems to apply to the case at bar.
I do not stop to discuss the proposition of the learned counsel for the defense, that .this action should, under the provision of section 1782 of the Code, have been brought by the attorney general, or that there was a fatal defect of parties by reason of the omission of one Sanders, to whom all the stock of the company was issued, as a defendant. I prefer to base my opinion on the other grounds above stated, and to hold that the demurrer should be sustained, with costs, but with leave to the plaintiff,to amend his complaint.
For a decision upon a motion to remand this case to the State court after its removal to the U. S. circuit court, see Langdon v. Fogg, 18 Fed. Rep. 5.
*437 In Nott v. Clews, N. Y. Supreme Court, First Department, Special Term, June, 1883, a somewhat similar complaint was sustained on demurrer.
The complaint was as follows:
The complaint of the above named plaintiff, who sues as well for all other stockholders of the defendant, Las Nueve Minas de Santa Maria Gold and Silver Mining Company, who may choose to come in and avail themselves of the benefits of this action, and pay their proportion of the expenses thereof, as for himself, respectfully shows to this court. That he is a stockholder of the defendant, Las Nueve Minas de Santa Maria Gold and Silver Mining Company ; that he purchased his stock in good faith, and for a valuable consideration.
And the plaintiff further shows and alleges on information and belief:
First. That the defendant, Las Nueve Minas de Santa .Maria Gold and Silver Mining Company, is a corporation having been duly created and organized in the month of October, 1881, under and by virtue of the laws of the state of New York, providing for the formation of corporations for mining and other purposes, and with a capital stock of §25,000,000 divided into one million shares of §25 each, having its principal office and place of business in the city of New York.
Second. That the individual defendants above named were the trustees and directors of said defendant, Las Nueve Minas de Santa Maria Gold and Silver Mining Company, for the first year after the organization of said corporation, and at the time of the issue and disposition of its stock as hereinafter mentioned.
Third. That soon after the organization of said defendant corporation as aforesaid, the said individual defendants, assuming to act' for said defendant corporation, entered into an agreement, or pretended agreement, with the owner of certain mining claims and property, situated in the State of Sonora, in the Republic of Mexico, to issue to him or to a trustee for him, or him and his associates, a« full-paid stock, nine hundred and ninety-nine thousand nine hundred and ninty-three shares of the capital stock of said defendant corporation, amounting to $24,909,825 (being all the capital stock of said company, except seven shares which were issued for cash), for the consideration, or pretended consideration, of the conveyance to said defendant corporation of said mining claims and property; and that add mining claims and property were conveyed in form, and said stock issued accordingly.
Fourth. That said mining claim and property were of little or no value for mining purposes, In the condition in which the same *438 were, when conveyed as aforesaid. That the only workings for mines or ores on said property were abandoned a century or more ago, and the shafts or openings were, in a great measure, filled with mirth, debris, mud and water, and the same could only be reopened by a great amount of labor, and the expenditure of immense sums of money, and only after such expenditure of labor and money could the presumption of the unproductiveness of said mines, arising from the abandonment of such working, be overeogae. That said mining claims and property were not worblvthe sum of’§^,999,825, paid for them as aforesaid, or any considerable prdpoftioh of that amount. That the same were purchased for §17,000 from the Mexican owners a short time before the conveyance thereof to the defendant corporation by the person who, directly or mediately, conveyed the same to said corporation. That the actual value of said mining claims and property did not, at any rate, exceed $500,000, and that the market value of same was less than said last mentioned sum, and that §24,999,835 was an unfair, excessive, and improvident consideration for tiie conveyance of said mining claims and property.
Fifth. That immediately after the issue of such stock as aforesaid, a large portion of the same was turned over by sucii vendor to, and received by, the individual defendants and their associates, friends, and nominees, at a nominal price, which price was less than live per cent, of the par value of such stock.
Sixth. That the. shares of stock, mentioned and referred to ilithe last preceding paragraph, were transferred and delivered to the individual defendants, their friends and nominees, in pursuance of the real scheme devised, and agreement made, between said vendor and the individual defendants, for the sale of the mining claims and property, and the issue of the stock of the defendant corporation thereof, or of a further agreement made at the same time. And that thereafter said stock, or the portion thereof turned over to the individual defendants, was disposed of or might have been disposed of, in the market at a large profit-.
Seventh. That the individual defendants at the time of the issue and delivery of the stock, and the conveyance of said mining claims and property, well knew or could and would, with the exercise of due and reasonable care and diligence, have known the condition and value of said property so conveyed to the defendant corporation, and that the market value thereof did not exceed §500,000. They also well knew, or could with reasonable care and diligence have ascertained, the cost of said property to the said vendor, and that' the same was purchased by him with the design and intention of convey *439 ing the same to the defendant corporation, then organized, or intended to be organized, under the laws of the State of New York.
Eighth. That the individual defendants, after the issue of the whole capital stock of the defendant corporation, failed and neglected to make a record in the office of the clerk of the county of New York, a certificate stating the amount of capital so fixed and paid, as required by statute under which defendant corporation was organized, and that no such certificate has at any time been filed or recorded in such clerk’s office.
Ninth. That after the issue and disposition of said stock of the defendant corporation, as hereinbefore stated, said corporation was entirely without means to work and improve said mining property, except the sum of $175 derived from the sale of the seven shares issued for cash. That the said individual defendants with a view of giving an apparent value to and encbancing the market value of the stock, made ostensible efforts to work said mines, and to extract ores therefrom, and that the result of such operations has been to create an indebtedness on the part of said defendant corporation to the amount of $1)0,000 and upwards.
Tenth. That the individual defendants, assuming to act on behalf of the defendant corporation, by the certificates of stock issued and circulated by them represented to the public, including this plaintiff, that the said stock was full paid. That such stock or a large proportion thereof, including the stock.now held by the plaintiff, has been sold as full paid stock in the open market, in pursuance of such representations, and thus passed to innocent holders and purchasers including the plaintiff.
Eleventh. That plaintiff purchased his stock in the open market, relying upon the representations aforesaid, and thereupon received from the prior holder or holders thereof certificates before that time, duly issued under the'sauclion of said individual defendants, declaring such stock to be full paid and accompanied by the usual power or powers of attorney for the transfer of the same. That said plaintiff caused such certificates, with such power or powers of attorney, to be presented at the office of said defendant corporation, and upon the surrender of such certificate and the proper transfer of such stock on the books of said corporation, in pursuance of the by-laws thereof, the said defendant corporation through its proper offices duly issued to the plaintiff, certificates, declaring that he was the owner and holder of three hundred full paid up shares in the capital stock of said defendant corporation, that being the number of shares represented by such surrendered certificates.
Twelfth. That the individual defendants have individually re *440 ceivecl large sums of money, gains and profits, from the sale of that portion of the stock of the defendant corporation turned over to them at a nominal price by the vendor of the property, as hereinbefore stated. That plaintiff is unable to state definitely the amount received by said individual defendants, and each of them, from the sale of such stock.
Thirteenth. That the individual defendants have not, nor have any or either of them, accounted concerning or paid over to the defendant corporation the difference between the §24,990,825, represented by the capital stock of the defendant corporation, issued for property as aforesaid, and the real value or market value of the property conveyed to the said corporation in exchange therefor, nor any part of such amount, nor have the individual defendants or either of them accounted for or paid over to said defendant corporation the sums of money, gains and profits received by them, or either of them, from the sale of the stock of the defendant corporation as herein-before stated.
Fourteenth. That four of the individual defendants are still directors of the defendant, Las Nueve Minas de Santa Maria Gold and Silver Mining Company, and are a majority of the board of directors, and control the same, for which reason said defendant, Las Neuve Minas de Santa Maria Gold and Silver Mining Company, is in no condition to bring and prosecute an action for the relief sought by this action and neglects to do so, and is for that reason made a defendant in this action, but no personal claim is made against the defendant, Las Nueve Minas de Santa Maria Gold and Silver Mining Company.
The plaintiff therefore prays: that the individual defendants may be adjudged and declared to be trustees as to the §25,000,000 represented by the one million shares of the capital stock of the defendant corporation, and that they may collectively and severally he adjudged and decreed to account of and concerning such sum. That they may also be severally adjudged and decreed to account of and concerning the sums of money, gains a-nd profits received by each from the sale of the stock of the defendant corporation as aforesaid.
That the value of the property conveyed to said defendant corporation, to be determined by this court, be credited on such accounting as may be just.
That the amount found due on such accounting may be brought into court and paid to a special receiver to be appointed by this court, and dispose of, as the court may direct.
That the plaintiff, and other stockholders of such corporation, who may choose to come in and share the benefits and expenses of *441 this action, may be paid their proportion of the amount found due on such accounting, after satisfying all prior just claims thereon, and that the plaintiff and such other stockholders and the defendant, Las Nueve Minas do Santa Maria Gold and Silver Mining Company, may have such other or further relief as may be just and equitable with costs of this action to be paid by said individual defendants.
Abbott Brothers, for defendants, in support of the demurrer.
Horatio F. Averill, for plaintiff, opposed.
Donohue, J.—It is sufficient to hold the complaint good to find any cause of action on the statement whether it entitles the party to the relief asked for or not. In this case, I think there are such facts as entitle plaintiff to some relief. The demurrer will be overruled.