Cazeaux *v.* Mali.

--- ◄●► ---

## CAZEAUX *vs.* MALI and others.

A complaint alleged that the Parker Vein Coal Company were authorized to issue stock to the amount of $3,000,000, in shares of $100 each; that the stock was worth par, and but for the acts of the defendants, would have continued so; that the defendant M. was president, J. vice president, and S. a director and treasurer of the company; that the plaintiff purchased 200 shares of the stock and still owned the same; that the defendants, M., J. and S. fraudulently issued 128,000 shares of the stock beyond what the company was authorized to issue, and converted the proceeds to their own use; and that by this over issue the genuine stock, including that held by the plaintiff, was rendered valueless and became unsalable.

*Held,* on demurrer, that the complaint stated a good cause of action; and that the action was properly brought by the plaintiff in his own name, without joining the other stockholders with him; the injury to each stockholder being separate and distinct from that sustained by the others. PEABODY, J., dissented.

The second count of the same complaint stated the ownership of the stock by the plaintiff, and that at the times of the purchase thereof the defendants made false representations respecting the character and value of the stock and the position of the company; representing that the affairs of the company were in a good and prosperous condition, and withholding and concealing from the plaintiff the fact that they had made, and were then making, over issues of stock; that the defendants made such false statements for the purpose of inducing various parties, and particularly the plaintiff, to purchase the stock; that the plaintiff was influenced thereby in making the purchases, and did not know of the over issue; and that by such over issue the shares of the stock had become valueless to the plaintiff. *Held* that this count was also good, on demurrer; but that it was so indefinite that it should be amended. PEABODY, J., dissented.

The third count alleged the purchases of stock by the plaintiff, and the over issue of the stock, both before and after the plaintiff's purchases; that the certificates for the unlawful stock were similar to those for the lawful stock, and that

Cazeaux v. Mali.

the plaintiff, believing them to be certificates of lawful stock, purchased 200 shares of them, and that he afterwards discovered that they were spurious. *Held* that this count, also, was good. That the loss was an individual loss to the plaintiff, and that the complaint need not allege that the plaintiff bought the stock of the defendants. PEABODY, J., dissented.

That the spurious certificates were the acts of the defendants, and by them the defendants represented to every person who received them that they were genuine; and this representation they made to the plaintiff as much as to the original purchaser.

That such certificates passing by a power of attorney, in blank as to the name of the purchaser, the defendants, in so passing them, authorized the insertion of the name of the plaintiff as the immediate purchaser from them, and made him thus the immediate contracting party with them.

*Held also*, that the action was well brought against the defendants; and that, the causes of action being all founded in tort, the several counts were properly joined.

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The complaint stated, 1st. That the Parker Vein Coal Company was a corporation chartered by the laws of Maryland; that the capital stock thereof was $3,000,000, divided into shares of $100 each; that it had property to the amount of $3,000,000; that before the acts therein mentioned it had been in a prosperous condition, the stock worth par, and the market price thereof about the same, and that but for the acts of the defendants, it would have continued to be of par value; that in June, 1853, the defendants became directors, and Mali became president, Jewett vice president, and Stacy treasurer of it; that they were intrusted with the affairs of the company; that between August 1st, 1853, and May 30, 1854, the plaintiff became the owner of 800 shares which he still owns; that the company then owned property of the value of $3,000,000, sufficient to make the stock of par value. That the defendants, while acting as such officers and managers, corruptly and fraudulently issued what purported to be shares of the stock of said company to the amount of 128,000 shares above the amount authorized by law, and sold it for $1,300,000, which they fraudulently misapplied to their own use. That the certificates of the stock so over issued were similar, in all respects, to certificates of shares of legitimate stock, and by reason of said over issue and sale of simulated stock, the genuine stock of said

company was depreciated in price and rendered valueless and unsalable in market. That by reason of said fraudulent acts, the shares purchased and held by the plaintiff have been rendered unsalable and valueless and lost to the plaintiff, whereby he has sustained loss and damage to the sum of $50,000.

And for a further cause of action, 2d. That between the 1st of August, 1853, and the 30th of May, 1854, the plaintiff purchased 800 other shares of stock of said company; that at the times of the purchase of said stock the defendants falsely and fraudulently represented that the affairs of said company were in a good and prosperous condition; withholding and concealing from the plaintiff the fact that they had issued and were then issuing, large amounts of what purported to be capital stock of said company beyond the amount authorized by law; and made said representations for the purpose of inducing parties, particularly the plaintiff, to purchase said stock; and that the plaintiff was influenced thereby in making said purchases. That the plaintiff was ignorant of said over issue. That by reason of said over issue of simulated stock, the shares of the stock of said company have been rendered wholly valueless and lost to the plaintiff, and he has sustained damages thereby and by reason of the false representations, to $50,000.

And for a further cause of action, 3d. That the defendants being officers of said company, before and between the 1st of August, 1853, and the 30th of May, 1854, and subsequently thereto and after the whole amount of the capital stock had been issued, made and issued certain false and fraudulent certificates and shares purporting to be of shares of the stock of said company, which false certificates and shares the defendants sold, and realized therefrom large sums of money. That said certificates were in appearance identical with certificates of the true stock. That the plaintiff believing them to be certificates of true stock, purchased what purported to be 800 shares, and it was duly transferred to him, for which he paid large sums of money; that said 800 shares were found to be spurious and to have been illegally and fraudulently issued, whereby the plaintiff sustained damages to $50,000.

Cazeaux v. Mali.

To this complaint the defendants Mali and Jewett demurred separately, and stated the following causes of demurrer. 1. That the complaint did not state facts sufficient to constitute a cause of action. 2. That distinct and separate causes of action alleged were improperly joined, viz : a cause of action against the defendants as officers of the Parker Vein Coal Company, for official misconduct to the injury of the plaintiff as a *stockholder* thereof, with a cause of action for an alleged fraud in the issue and sale of spurious for genuine certificates of stock, and with another cause of action for alleged false and fraudulent misrepresentations by which the plaintiff was induced to purchase spurious certificates, or a depreciated stock. 3. That to so much of the causes of action as was the alleged official misconduct of the defendants and injury to the corporate property and to the stockholders, the Parker Vein Coal Company was a necessary party. 4. That for the official misconduct and injury to the corporate property alleged, the remedy was by the corporation, and not by the stockholders, severally and individually. 5. That for so much of the cause of action alleged as related to false and fraudulent representations to the injury of the plaintiff, the complaint was defective in not specifying the alleged representations, and the time when they were made, and that they were false when made ; and that they were made with a knowledge that they were false, and with an intent to deceive and injure the plaintiff. 6. That in respect of said cause of action the defendants were misjoined, each with the others.

The demurrer was argued, at special term, before MITCHELL, J., by whom the following opinion was delivered, on deciding the case ; and the opinion was adopted by a majority of the court, at general term, as expressing its views.

*J. M. Van Cott*, for the appellants.

*F. Dominick*, for the plaintiff.

*By the Court*, MITCHELL, J. There are three counts in the complaint. The first count shows that the Parker Vein Coal

Company were authorized to issue stock to the amount of three millions of dollars, in shares of $100 each; that the stock, at the time of the acts complained of, was worth par in the market, or nearly so, and in its intrinsic value, and that, but for the acts of the defendants it would have continued to be so; that Mali was president of the company, Jewett vice president, and Stacy a director and treasurer. That the plaintiff purchased 200 shares of the stock, between the 27th of October, 1853, and 25th of February, 1854, and still owns the same; that, at that time, the company's property was worth, at least, three millions of dollars; that the defendants fraudulently issued 128,000 shares of the stock beyond what the company was authorized to issue, and realized from the sale $1,300,000, which they converted to their own use; and that by this over issue the genuine stock was rendered valueless and became unsalable in the market. And the plaintiff's shares have been rendered thereby unsalable and valueless.

By the decision in the court of appeals, the company is not liable for the stock thus over issued; this count is not, therefore, liable to the objection that the company should sue for the wrong.

The count does not show what the plaintiff paid for the stock; whether par, or so small a sum that his damages must be nominal, if they are to be limited to the deterioration in value which arose after he became the purchaser, as is most probably the true rule; but it shows that, by the acts of the defendants the stock has become *valueless* to the plaintiff. This objection, therefore, is one not to be taken by demurrer, but on a motion to make the complaint more definite. Then it results that, by the fraudulent acts of the defendants, they have made the stock of the plaintiff valueless to him, and have put in their pockets the value in money of which they have deprived him. This is an injury which is peculiar to this plaintiff, as regards the stock owned by him. He could not join the other stockholders with him, because they do not own the shares of their stock jointly, but separately. Each owns his own shares separately, and each sustains his separate loss on his own stock.

Cazeaux *v.* Māli.

It is said that the depreciation in the stock was caused by the mistaken opinion of the public, that the spurious stock must be assumed by the company. No such fact appears in the pleadings; and if the fraudulent act of one party causes an injury, which could not be complete but for the concurrent ignorance of the public, the wrong still exists, and the consequent damage; and as there is but one wrongdoer, he should make amends for the consequences of his own wrongful acts.

The second count states the ownership of the stock as before, and that at the times of the purchase of the stock, the defendants made false representations respecting the character and value of the stock and the then-position of the company; representing that the affairs of the company were in a good and prosperous condition, and wholly withholding and concealing from the plaintiff the fact that they had theretofore made and were then making the over issues of stock; that the defendants made such false statements for the purpose of inducing various parties, and particularly the plaintiff, to purchase largely of the stock; that the plaintiff was influenced thereby in making the purchases and did not know of the over issue; that by such over issue, the shares of the stock have become valueless to the plaintiff.

This is a count for a false representation, made not (as is common) to the *seller* of goods, but to the *buyer* of property. To sustain it, the same facts must concur as in an action for a false representation of the credit of a buyer. The representation must be false in fact, and so known to the defendant; must have been made with the intent to deceive the plaintiff, and must have produced that effect, and have caused loss to the plaintiff; and the pleading must state what the false representation was. It is not essential that the representation should be addressed directly to the plaintiff; if it were made with the intent of its influencing every one to whom it might be communicated, or who might read or hear of it, the latter class of persons would be in the same position as those to whom it was directly communicated; but they must have come to a knowledge of it before their purchase. If the defendant alleged as true, of his

own knowledge, what he may possibly have supposed to be true, but which was untrue in fact, and did this with the intent to deceive, it is deemed the same as if he knew it to be untrue. He is under no obligation to communicate any thing to one not purchasing directly from him, but if he begins to communicate and makes a statement, which is true so far as it goes, but which misleads, because he conceals a fact which he knows, and which if communicated would have prevented a purchase, and he does this with a view to deceive the purchaser, he is under the same responsibility as if he had made a willfully false statement as to the matter thus concealed. The rule is saved from too great laxity in all these cases, by one indispensable part of it, namely, that in all cases it is essential that the false representation, or the concealment which made the partial statement practically false, should be made with the intent to deceive. (*See Addington* v. *Allen, in court of errors.*) By these rules this count is to be tested. It states that the defendants made false representations respecting the value &c. of the stock; if it had stopped here, it would have been demurrable, as not showing what the representations were, and on the trial of this case, nothing could be proved under that part of the count alone; but it proceeds and states what the representations were, and limits the generality of the previous clause by a special statement " representing that the affairs of the company were in a good and prosperous condition, and concealing from the plaintiff the fact of the over issues." It is not alleged to whom this representation of the condition of the company was made, nor directly that it came to the knowledge of the plaintiff; but, indirectly, it may be inferred that it did come to his knowledge, for the count states that the plaintiff was *influenced* thereby in making the purchases. He could not have been influenced by the representations, if they had not been in some way reported to him. On demurrer this may be deemed sufficient. (*See opinion of Denio, J., in court of appeals, in Zabriskie* v. *Smith,* 3 *Kern.* 330.) According to this count, with this inference in its favor, the defendants made a representation, (it is enough if it was in a newspaper, intended to be

Cazeaux *v.* Mali.

read by dealers in stock, and to influence them to purchase, and that it was so read by the plaintiff and did so influence him;) that the company was in a prosperous condition, and yet concealed the fact that they had made large over issues of stock, which they must have known would impair its value; and they must also have known that the purchaser would have regarded the actual statement as false, if the fact concealed had been known to him. Taking into consideration the rules already stated, and that the case is the same as if the defendants had gone to the plaintiff and asked him to buy the stock, telling him that the company was in a prosperous condition, thus professing to enlighten him as to its true condition, and yet withholding from him the knowledge of their wrongful acts which they knew would reduce the value of the stock, and that this was done with the intention to deceive, and there can be but little doubt of the defendants' liability. This is on the assumption that every thing stated in the count, although improperly stated, is true. On a trial it may turn out that one or more of the defendants had no knowledge of the fact that there was an over issue, or that the company was not entirely prosperous; and that he or they had no intent to deceive.

This count appears to be good on demurrer; but, it is so indefinite that it should be amended. It should clearly show whether it depends on any false representation, except that resulting from the concealment; also in what manner that representation was made, as whether orally or in writing; and distinctly allege that the representation came to the plaintiff's knowledge before his purchase, in whole or in part; and how it came to his knowledge; and when it was made; and what amount of stock he bought after that time. It should be borne in memory that this court places concealment and falsehood in these cases on the same level; the count should therefore, especially avoid the holding back of any fact, or any distinct and full statement, connected with the cause of action, which, if fairly disclosed, would show that no cause of action really existed.

The third count alleges the purchases of stock by the plaintiff,

and the over issue of the stock, both before and after the plaintiff's purchases; that the certificates for the unlawful stock were similar to those for the lawful stock, and that the plaintiff believing them to be certificates of lawful stock, purchased 200 shares of them and paid large sums for them, and that he afterwards discovered that they were spurious.

This loss is clearly individual to the plaintiff. It is said that he does not allege that he bought of the defendants, and that he has his remedy against the seller of the stock. At common law a tort feasor, when sued, could not plead the non-joinder of his co-tort feasors. It was said that the tort was joint and several; but the principle of the rule lay deeper: it was, that the wrongdoer is not entitled to the aid of a court to call on others to contribute and bear a part of the penalty, for which he also was liable for his wrong doing. Much less can he say, when sued, that there is another party, who is entirely innocent, but whom he has deceived, and who, in consequence of his deception has innocently transferred what he supposed to be of value to the plaintiff; and that the plaintiff must, therefore, have recourse to that person and not to the wrongdoer himself.

It is also said that the defendants, if guilty, are liable to the person to whom they sold the property; and that a cause of action for a tort cannot be assigned. To this there are several answers. The first purchaser may have passed the stock away for its full value, and so have suffered no loss : he assigns, then, not the tort, but the stock to the present plaintiff; and the present plaintiff is the first person who suffers any loss by the fraud. The spurious certificates were the acts of the defendants; (in this unlike the *defendants* in the New Haven Rail Road case,) by the certificates the *defendants* (not the company) represented to every person who received them, that they were genuine; and this representation they made as much to the plaintiff as to the original purchaser.

Again; these certificates pass by a power of attorney, in blank as to the name of the purchaser : the defendants so passing them authorized the insertion of the name of the plaintiff as the imme-

Cazeaux *v.* Mali.

diate purchaser from them, or from their agent, and made him thus the immediate contracting party with them.

This count, therefore, is also good.

The action is well brought against the defendants. They could all join in every act alleged against them : the representations made by them may have been in writing and in print, and signed by each; the certificates of stock may have been signed by all, or by two and issued by the third in common with the others. As the causes of action are all founded in tort, the several counts are properly joined.

The demurrers must be overruled, with leave to the defendants to answer without payment of costs, unless the plaintiffs elect to amend, and make their complaint more definite in the matters above stated ; but with like leave on payment of costs of the demurrer, on his making such amendment.

PEABODY, J., (dissenting.) The first ground of demurrer to this complaint is, that neither of the counts states facts sufficient to constitute a cause of action.

As to the first count, the difficulty in deciding on its merits arises quite as much from the surplusage it contains as from any other feature of it; but with an abundance of irrelevant matter there are points in which it is meagre, and the matters indispensable to a recovery are very scantily given.

This count on the whole is intended to state as a cause of action, that the defendants, by issuing pretended stock of the company, have rendered the stock of the plaintiff unsalable, valueless and lost to him ; and it proceeds on the idea not that the company is a loser in any manner ; nor on the idea that the stock of the plaintiff is diminished in its value intrinsically as representing an interest in property of less value; nor on the idea that the stock of the company was increased in amount or number of shares, so that the plaintiff's 800 shares represented a less proportion of the whole amount and therefore a smaller amount of the property of the company ; but on the idea that by the creation of false and fictitious stock the market and salable value of the plaintiff's stock was diminished and destroyed.

The damage he claims to have sustained is that for the purpose of sale in the market his stock was damaged and lost to him. He does not aver any special damage, such as that he lost the benefit of a sale he would otherwise have made, or aver that he would have sold, or desired to sell. (*Kendall* v. *Stone*, 1 *Seld.* 14.) The charge is simply that stock which he held, intrinsically worth all that it would have sold for, was rendered unsalable. This is the only damage for which he states a cause of action ; and if such an action will lie at all it will certainly lie at the suit of a stockholder. It will not lie at the suit of the company. It makes no difference in this respect that all the other stock of the company was damaged in the same manner ; for if it were, suits for such damage would lie only in favor of individual stockholders. Each man's stock is his own property, and the corporation is not injured by the unsalableness of the plaintiff's or other stockholders' shares in it. The stockholders individually, and as such, and not the corporation, which collectively they constitute, are injured by such a diminution in the salable value of their stock. What are the damages the plaintiff has sustained ? He has not sold his stock, but still owns it. It is intrinsically worth no less than it was before. It was then worth the price for which it was selling, and it is now worth the same, about par. It cannot now be sold, to be sure, by reason of the acts of the defendants. But the plaintiff apparently does not wish to sell if he could, and it is worth as much to hold as it ever was. I cannot perceive that he has sustained, on his own showing, any damage, legal or actual. If he had lost a sale which he would otherwise have made, or had been compelled to sell for a diminished price, or had even wished to sell and been unable by reason of these acts of the defendants, his cause of action in this respect would perhaps have been made out, but he does not say he has done either. But there is another difficulty. We cannot perceive judicially, and we are not informed by the complaint, how the issuing of what purported to be, but was not stock, should injure the salable price or value of the real stock of the same company. That a diminution in the market value of the plaintiff's stock should follow from the appearance of pre-

tended stock is not a consequence so natural and necessary that we can perceive, unaided by any averment or suggestion of the manner in which it is produced, that it is the effect following from that cause. It is not pretended that the company were liable for it in any manner. It is not averred that it was offered for sale in the market, nor is it stated whether by being mistaken for genuine or known to be spurious, it produced the damage of which the plaintiff complains. He must show how it produced the consequence of which he complains, or state facts from which the effect can be seen to follow. (11 *How. Pr. R.* 242, 254.) The issue of spurious stock of the New York and New Haven Rail Road Company diminished the market price of all stocks in the market by creating general distrust, and yet the author of that wrong, no one would pretend, is responsible to the holders of the divers stocks of other corporations for that consequence of his act. So in this case, it is very doubtful from this count whether the plaintiff has any cause of action against these defendants. He certainly has not stated any, I think.

The second count is not less eccentric than the first, and with this as with the first, the great difficulty is to ascertain the intention of the pleader. The plaintiff bought some stock. At the time, the defendants falsely represented the value of it and the position of the company, stating that the affairs of the company were prosperous; and concealed from him the fact that they had issued and were issuing pretended stock beyond the amount authorized by law; that the *representations* were made *for the purpose* of *inducing* other persons, and particularly the plaintiff, to purchase largely of the stock, and that the plaintiff was influenced thereby in making the purchases; that by the fraudulent over issue, the shares have become valueless, and he has sustained damages thereby, and by reason of the false representations of the defendants, to $50,000. In this count the wrongful acts averred against the defendants are, misrepresentations and concealments, while damages are claimed not only for those, but also for issuing spurious stock. The misrepresentations and concealment are averred, and the former are called false and fraudulent representations, and the latter is called

Cazeaux v. Mali.

concealment of a fact; but it is not averred that the circumstances of the company were not as represented, or that they were not prosperous, or that the representations were untrue in fact; nor is it any where averred that the fact said to be concealed had an actual existence, unless the word fact implies it, which, when used in this manner it does not, more than when a fact is said *to be misstated,* which in that case will be impossible, for in that sense the statement would not be of a fact, but of something not a fact. If these statements were false and fraudulent, the facts inconsistent with their truth, or on which their untruth depended, should have been stated; and if the fact said to have been concealed existed, its existence should have been distinctly averred. An incidental remark from which the untruth of the former, or the existence of the latter may be inferred, or even must follow, does not properly supply the place of direct negation in the former, or affirmation in the latter case. The claim for damages by reason of the over issue, in this count, is entirely unfounded, there being no averment of an over issue or of any thing from which damage to the plaintiff could arise if there had been.

But the purchase by the plaintiff was not made from or through the defendants, and the misrepresentations were not made to *him.* No relations are shown to have existed between the plaintiff and the defendants which made the disclosure of facts as to the stock the duty of the defendants; and for aught that appears, the withholding and concealment complained of was proper, and constituted no breach of any duty to the plaintiff. The concealment is said to have been *from* him, but the representations were not *to* him, though both are said to have been for the purpose of influencing and inducing him, among others, to purchase, and it is said he was influenced thereby in the making of the purchases.

When it is considered that the existence of the facts represented is not negatived, nor the existence of the one said to have been concealed affirmed, the intent to defraud and deceive should at least be required to be fully stated, and the fact that the plaintiff was misled thereby should also be stated; and it

may be doubted whether these statements added to what already appears, would make out a cause of action. (*Addington* v. *Allen*, 11 *Wend.* 375. *Pusley* v. *Freeman*, 3 *T. R.* 51. *Wells* v. *Jewett*, 11 *How. Pr.* 242. *Bell* v. *Mali*, *Id.* 254.)

For aught that is stated here the affairs of the company were as represented, good and prosperous, and if they were not, there is no allegation of an intent to deceive and defraud the plaintiff, or that he was deceived or defrauded by the misrepresentations.

As to the concealment, there is nothing to show that the fact alleged to have been concealed existed; and if it did, there is nothing to show that it was the duty of the defendants to disclose it; and if both appeared, there is nothing to show that the plaintiff was misled or deceived by the concealment to do any act from which he sustained damage.

The third count, divested of irrelevant matter, states as a cause of action, that the defendants issued fraudulent certificates of the shares of said company which they sold. That the certificates in appearance were identical with those of the genuine stock. That the plaintiff believing them to be certificates of true stock, bought *what purported to be* 800 *shares* OF THE STOCK OF THE COMPANY, which was transferred to the plaintiff, and which was found to be spurious and fraudulently issued. There is great difficulty in saying that any person to whom spurious stock may go may maintain an action against the original author of the stock. He defrauded the party to whom he sold or passed it; and it may be said gave him the means of defrauding others. The plaintiff certainly may have an action against the party from whom he received it, and so may each person who has received it have an action against his vendor. This action, however, in the absence of guilty knowledge in the vendor, would be on contract, on the warranty, express or implied. A recovery by one against the party issuing it would certainly be a bar to an action by any other subsequently receiving it. The cases cited by the plaintiff were not directly in point to sustain this principle, and I think leave it in doubt. *Thomas* v. *Winchester*, (2 *Selden*, 397,) seems to resemble this case as nearly as any, and tends strongly to show that an action will lie by the

party injured against the remote author of the act causing the injury, but I think that it is distinguishable from this. There the act was negligence in carelessly selling a poisonous drug not labeled, and thus represented to be a harmless medicine. May any subsequent holder of a note maintain an action for deceit against the party who made the note by forging the signatures to it? So with a counterfeit bank bill. Is the author of one liable to each person who may subsequently receive it, believing it to be good? If so, the author of any spurious article of merchandise is liable to any one to whom it shall be sold by a subsequent holder, for the damage he may sustain by reason of the deceit practiced; which is certainly much more than is warranted by the cases above referred to, and is entirely in harmony with the opinion of the court there. That case (*Thomas* v. *Winchester*) seems to proceed on the ground that the article sold and circulated for use was imminently dangerous to human life, and *Longmeid* v. *Holliday*, (6 *L. and Eq. Rep.* 562,) is referred to as recognizing the distinction between such an article and any other, and seems to concede that in any other case the negligent party would be liable only to the party with whom he contracted, and on the ground that the negligence was a breach of his contract.

The case of the *Farm. and Mech. Bank of Kent Co. Md.* v. *The Butchers' and Drovers' Bank*, just decided by the court of appeals, does seem to touch this case. There the question was, whether the principal was liable for the acts of the agent. Here it is whether the agent himself is liable to this plaintiff for his own acts. That the principal (the corporation) was not bound in this case is assumed as a part of the basis of this action, and the effect of the acts of the agent as to himself. What responsibility as to himself follows from this unauthorized act, is the question here; and no question of agency concerning the liability of his principal is involved in this inquiry.

In this case, however, there are defects in the count which are fatal to it. There is no averment that the defendants intended to deceive and defraud the plaintiff or any one else, and

Cazeaux *v.* Mali.

this is indispensable under the cases above cited. (3 *T. R.* 57. 11 *Wend.* 375. 11 *How. Pr. Rep.* 242, 254.)

If an action for this cause will lie at all by this plaintiff, it must be in substance an action for deceit, and in that action the averment of this intent was always essential.

Again; it is not averred that the stock purchased by the plaintiff was that issued by the defendants, or even that it was embraced in the certificates made by them and said to be spurious. The whole statement of the case is unlike an action for deceit. If the plaintiff was deceived by the certificates, and by them induced to believe that A. B. owned 800 shares of the stock of said company, and under the influence of, and relying upon, the false and fraudulent pretense and representation contained therein, made by the defendants with intent to defraud, &c. &c. was induced to buy of said A. B. and did contract to buy of him 800 shares of said stock and paid him a certain number of dollars therefor, he may perhaps on stating such a cause of action in a complaint, be able to recover the damages he has sustained; but he states no such case; and on this count, I think, cannot recover.

There is no misjoinder of causes of action in this case, as claimed by the defendants. All the causes are for torts, and directly by the plaintiff in his own right, against the defendants, for their own acts. The action is properly brought by the plaintiff if at all. If it will lie at all it will be at his suit. It will surely not lie at the suit of the company, who have no rights impaired, and cannot bring it. Nor is the company, as claimed by the defendants, a necessary party to this suit, in any aspect of it.

The judgment below should be reversed, and judgment entered for the defendants.

Order appealed from, affirmed.

[New York General Term, November 2, 1857. *Mitchell, Clerke* and *Peabody*, Justices.]