JUDGE COFER
delivered the opinion oe the court.
The Traders’ Bank and Warehouse Company, a corporation created by the laws of this state, having made to S. Ullman a voluntary assignment of “ all the estate and all the ehoses in action and evidences of debt belonging to said company,” to pay the debts of said corporation, and to pay over to it any *652 surplus that might remain, the appellants, who are the owners, each in his own right, of certain shares of the capital stock of the company, brought this suit in equity in the Louisville Chancery Court against the trustee (Ullman), the corporation, and the president, assistant cashier, and four out of the seven directors of the company, in which they sought to compel the said officers to make good to the corporation large sums alleged to have been lost to it by their negligence, malfeasance, and fraud; and also to procure a settlement, under the supervision of the chancellor, of the accounts of the trustee, and the payment to the shareholders instead of the corporation of any surplus that might remain after the payment of the liabilities of the company.
They alleged that Ullman had refused to prosecute the suit against the delinquent officers, and that the shareholders were too numerous to be brought before the court within a reasonable time, and asked to be permitted to sue for the benefit of themselves and all others. They also set forth the amount of stock held by each of the plaintiffs, and gave the names of the other, shareholders and the amount of stock held by each. They alleged that the persons sued as president, assistant cashier, and directors had acted as such from the organization of the company to the date of the assignment/ and continued in office when the suit was commenced.
The plaintiffs also charged that through the gross negligence, willful malfeasance, and fraudulent disregard of the rights of the company on the part of the officers sued the stock had become almost worthless; that - the business of the corporation had to be suspended and its property had been sacrificed. They set forth in detail the facts constituting the negligence, malfeasance, and fraud complained of.
The chief matters relied upon to show negligence were that the president and directors had, with full knowledge of the facts, allowed the cashier, who was known to them to be *653 insolvent, to withdraw from the vaults of the company large sums of money without giving any security therefor, and without leaving any evidence of the amounts so withdrawn except simple memoranda, which they, with a full knowledge of the facts, permitted to be counted and carried into the books as cash on hand; that between the 26th day of April, 1871, when the company commenced business, and the 1st day of January, 1872, the money so drawn out by the cashier amounted to the sum of twenty-two thousand dollars, and on the 1st day of April, 1872, to $44,964.88.
They also alleged that although the directors alone had authority to make discounts on behalf of the company, they with full knowledge of repeated embezzlements by the cashier allowed him to make discounts with the funds of the company for his own benefit, upon paper known to them to be worthless, to the aggregate amount of $33,262.85, no part of which had been repaid except the sum of $569.49; that the cashier was allowed to withdraw other funds, and to make up the overdrafts of solvent customers of the company with his own checks; and that in these various ways he became indebted to the company in the sum of one hundred thousand dollars, fifty thousand of which had been secured, but that the residue would prove almost a total loss.
They furthermore alleged that the cashier gave bond with sufficient sureties in the penalty of fifty thousand dollars, conditioned that he would faithfully discharge all his duties as cashier, but that the president and directors, with the concurring votes of the directors sued, canceled, and destroyed the bond; that the assistant cashier had subscribed for one hundred and twenty shares, and in part payment therefor executed his note to the company for six thousand one hundred and five dollars, which note he was permitted to take up on surrendering his stock; that after the directors had resolved to make an assignment, and a meeting of the shareholders had been called for *654 that purpose, the president, assistant cashier, and three of the directors who are sued, by a fraudulent arrangement between themselves, under the pretense of buying for the company, or of canceling stock held by them, drew from the funds of the corporation then on hand the aggregate sum of $4,344.50, which they converted to their own use.
These acts, with others not necessary to be particularly noticed, were alleged to have been done with the knowledge and concurrence of the president and directors, or through their active participation.
The plaintiffs asked that Ullman might be required to settle his accounts as trustee under the supervision of the chancellor, and to pay over to the shareholders, instead of the corporation, any surplus that might remain after paying the debts of the company; that the president, directors, and assistant cashier might be compelled to pay into court, for the benefit of all the shareholders, the sums improperly withdrawn by them respectively and all the sums lost to the company as stated in the petition; and for general relief.
The plaintiffs also alleged that in October, 1871, the board of directors, with the concurrence of the directors sued, issued to the cashier four hundred shares of stock without requiring him to pay therefor, but took his unsecured note for $20,000, which has not been paid, and accepted $18,507.62 in full of balance of the price of said stock; and in an amended petition they alleged that a firm styled Thomas Emory’s Sons hold or claim to hold four hundred shares of stock in the company; that this is the same stock referred to in the original petition as issued to the cashier; that the Emorys held it under a transfer from him as a pledge for $20,000 loaned him by them; and they were made defendants, and called on to assert their rights.
Whereupon the Emorys filed an answer, in which they admitted the allegations of the petition, and united in the prayer *655 of the plaintiffs; and making their answer a cross-petition against the president, assistant cashier, and the four directors made defendants in the petition, they alleged additional facts, showing the grossest misconduct on the part of the president and cashier. They alleged that the cashier had in fact paid nothing for the stock pledged to them; notwithstanding which both made a sworn statement, under the seal of the corporation, that the stock belonged to the cashier, and had been fully paid for by him, and was not in lien to the company for any debt of the said cashier. They alleged further that the cashier in fact never owned or paid for the stock, but it was fraudulently issued to enable him to borrow money for the use of the company, and that the money so borrowed of them was paid by the cashier to the directors, and went into and formed a part of the assets of the concern; that the president, cashier, assistant cashier, and the four directors sued confederated and combined to cheat and defraud them, the said Emorys, and that they did by their falsehoods and fraudulent practices induce them to loan said sum of $20,000 to their cashier, and that they knew how the money had been obtained by him.
These cross-petitioners prayed that they be adjudged to be creditors of the company; that the trustee settle the trust under the supervision of the court; and that the president and directors be required to make good the losses sustained through their misconduct.
Subsequently Ullman, the trustee, moved the court to strike his name from the petition as a defendant because of a misjoinder of parties, and also to strike from the petition and cross-petition all the names except one in each, or that the plaintiffs and cross - plaintiffs elect in whose single name as plaintiff in each the suit in the petition and the suit in the cross-petition should be prosecuted. He also moved to strike from the petition and cross-petition all causes of action therein set forth except one in each.
*656 The officers of the corporation made similar motions, and also moved that the cross-petition of Emory’s Sons be stricken from the files.
The motion to require the plaintiffs and cross-plaintiffs to elect which of the causes of action set fo,rth in the petition and cross-petition they would prosecute was first heard, and resulted in an order requiring the plaintiffs to elect on or before a designated day which of said causes of action they would prosecute; to which order the plaintiffs at the time excepted.
It appears from the opinion of the chancellor that this order was based on the ground that so much of the petition as sought a settlement of the accounts of Ullman, the trustee, constituted an action founded in contract, and that so much as sought a recovery against the officers of the corporation for negligence, malfeasance, and fraud was an action in tort.
On the 30th day of March the plaintiffs, by attorney, in obedience to the rule of court, “reserving all exceptions thereto and under protest,” dismissed without prejudice to any future action so much of the petition as sought a settlement of the trust.
On the 8th day of May following the court ruled the plaintiffs to elect within one week “ which one of them shall in his own name prosecute this suit,” and the answer and cross-petition of Emory’s Sons were stricken from the files; to all of which the plaintiffs and Emory’s Sons excepted. The plaintiffs having failed to make the required election within the time allowed them for that purpose, their petition was dismissed, and from these orders they and Emory’s Sons have appealed.
The questions made, although relating mainly to rules of practice, involve incidentally, if not directly, matters vitally affecting the relative rights and responsibilities of the share *657 holders and the members of the governing bodies of private corporations. It was not contended in the argument that either the original or the cross-petition is insufficient. Indeed the making of motions tacitly, at least, concedes that the facts alleged constitute a right of action in some one against the officers of the corporation, and these motions likewise in effect concede the right of the shareholders to recover on the facts contained in both the original and cross-petition. The only effect of the motion to strike out the names of all the plaintiffs but one was to raise the question whether they had a joint cause of action or were- bound to sue separately; and the only effect of the motion to elect which cause of action • the plaintiffs would prosecute was to raise the question whether a cause of action against the trustee Ullman to settle the trust could be united in the same petition with a cause of action against the officers of the company to compel them to make good losses resulting from their negligence, malfeasance, and fraud in the management of its affairs.
It was contended in argument by counsel for the appellees that there was an improper joinder of causes of action, because the suit to settle the trust was founded in contract, and the right of action against the officers of the corporation was in tort. Whether this position is maintainable must depend upon the proper construction of section 111 of the Civil Code, which provides that several causes of action may be united in the same petition where each affects all the parties to the action, may be brought in the same county, be prosecuted by the same kind of proceedings, and all belong to one of the following classes :
1. Claims arising out of contract express or implied. Other classifications are made in that section, but they need not be quoted, as they do not affect the question under consideration. The language of the section is permissive merely, and was intended to liberalize and not to make the rules of practice *658 more technical and restricted than -they were before the adoption of the Code.
There can be no doubt but that under the classification of forms of action existing before the Code was adopted an action against the officers of the company upon the facts alleged in the petition in this case would have been in form ex delicto; but while this is true, the wrongs complained of are so connected with an implied contract that in a certain sense the canse of action may be said to arise ont of a contract.
In undertaking to discharge the duties pertaining to their respective stations the law implies an undertaking on the part of officers of a corporation that they will use ordinary care and will act honestly in managing its affairs. The president and directors were trustees for the stockholders, and it was their legal duty to act honestly, and to use reasonable care to preserve the fund committed to their control, and as this was their legal duty the law implies a promise on their part to perform it. (United Society of Shakers v. Underwood, 9 Bush, 609; Charitable Corporation v. Sutton, 2 Atkyns, 405.)
While therefore the suit is in a qualified sense for a tort, it is not of that class of torts which can not be united in the same petition with a cause of action strictly ex contractu. We are not aware that the propriety of joining in the same petition causes of action like those set up in this case has been called in question in this court, either before or since the adoption of the Code. A cause of action against a fiduciary for money collected is constantly united in the same petition with a cause of action for negligence or fraud in failing to collect or to preserve the estate; and while so much of the action in such a case as seeks a recovery for negligence or bad faith is founded in tort in the same sense as that asserted against the appellees in this case, we know of no case in which it has been held that they were improperly joined.
The case of Wilson v. Thompson (1 Met. 123) is referred *659 to as establishing a different rule, but we do not so understand it. That was a suit against Ball on a note executed in his name by Thompson as his agent, and against Thompson for an alleged fraud in purchasing slaves, for a part of the price of whom the note sued on was given. It was not alleged that Ball had participated in the fraud, and there was a misjoinder for the obvious reason that an action against one upon a contract could not be joined with an action against another for fraud.
The facts upon which the MS. opinion, note /, Myers’s Code, page 308, was based are not stated; but we think we may safely assume that the fraud complained of in that, case was not connected with the contract sued upon.
Whenever, the plaintiff has a cause of action upon a contract, and also a cause of action for fraud or negligence directly connected with the contract, we have no doubt but he may unite them in the same petition.
The plaintiffs in this case sought to settle the trust in the hands of the assignee of the company, and to have any surplus assets which might remain after the debts were paid distributed to the shareholders; and they sought to recover from the officers of the company on a liability they were under to the corporation. The plaintiffs could not, either jointly or singly, sue the officers of the company without joining Ullman as a party defendant. He refused to sue them himself, and if the plaintiffs sued in their own names, Ullman was a necessary party; and as he was not a party to the wrongs alleged against the other defendants, if the plaintiffs can not join him and them together in the same suit, it would result that no action can be maintained against them by any one. This would present the anomaly of a right without a remedy, and we will not decide that frauds such as are alleged here, and which for the purposes of this appeal must be .regarded as established, are beyond the remedial power of the courts.
*660 2. The rule compelling the plaintiffs to elect which one of them would prosecute the suit in his own name and for his individual benefit was based on the idea that the acts and omissions relied upon as the ground of a recovery against the officers of the company gave to each shareholder a separate right of action against them, and that therefore each must bring his separate action to recover the amount of damage resulting to him in consequence of the acts of the defendants. In the opinion of the learned counsel for appellees the only injury for which the plaintiffs could recover was the depreciation of the value of their shares on account of the alleged misconduct of the defendants. The error in this view consists, as we think, in regarding the injuries complained of as done to the shareholders and not to the corporation. The funds lost did not belong to the shareholders, but to the ideal person called “The Traders’ Bank and Warehouse Company.” It was the sufferer by the losses sustained; and as every actionable-wrong gives to the person injured a cause of action, the right to sue these officers was primai'ily in the corporation. If the corporation or its assignee had sued, the shareholders-could not have maintained either a joint or separate action; but the corporation being still under the control of the alleged unfaithful officers, it would be unreasonable to expect them to sue themselves; and the trustee who might have sued them as the representative of the corporation having refused to do so, the shareholders, as the beneficiaries of the assets of the company, have a right in equity to sue in its room and stead. And we may here remark that, suing as they do as a substitute for the injured corporation, they can only sue in equity, because their rights are in this respect equitable only. It does not matter if the action be founded upon a tort; the shareholders, not having a legal right to sue, must either come into equity or they will be without remedy.
In the case of the Charitable Corporation against Sutton *661 (2 Atkyns, 400) Lord Hardwick sustained a suit like this, and in respect to the jurisdiction of a court of equity he said, “ The courts of this kingdom are wisely formed of both courts of law and equity, and so are the tribunals of most other nations, and for this reason there can be no injury, but there must be a remedy in all or some of them; and therefore I will never determine that frauds of this kind are out of the reach of courts of law or equity, for an intolerable grievance would follow from such a determination.”
In Robinson v. Smith (3 Paige, 230), which was a bill in equity by a part of the shareholders in a corporation against the directors to hold them personally liable for the loss of the corporate funds resulting from their misconduct and negligence, Chancellor Walworth held that there was no good reason for requiring each shareholder to file a separate bill.
Hichens v. Congreve (4 Russell, 574) was also a bill in equity by a portion of the shareholders in a joint-stock company, who sued for the benefit of all, to recover against the directors personally for a fraudulent conversion of a part of the corporate funds to their own use. No question was made in that case as to the right of the shareholders to maintain a joint suit, but it was insisted that as all had not joined there was a defect of parties; but Lord Lyndhurst held that a part might sue for all.
Counsel for the appellees insist, however, that the cases of Turquand v. Marshall (4 British Law Reports, Chancery Appeal Cases, 376), Overend, Gurney & Co. v. Gurney (ibid. 701 and 5 ibid. 480), Gratz v. Redd (4 B. Mon. 178), Bridges v. Railroad Co. (7 B. Mon. 558), Gardiner v. Pollard (10 Bosworth), and Cazeau v. Mali (25 Barb. 578) establish a different rule. We have not seen the case in 10 Bosworth, but there is nothing in the other cases inconsistent with the rule as laid down in the cases in Atkyns, Paige, and Russell.
The case of Turquand v. Marshall was unlike this. So far *662 as any attempt was made to charge the directors for losses sustained by the corporation through their negligence or misconduct, it was held that the bill failed to make out a case against them, not because such a bill could not be maintained at all, but because the averments did not show such neglect of duty or misconduct as would render the directors liable to an action in any form or in any forum. But there is a plain intimation in the opinion of the lord chancellor that if it had appeared that the funds of the corporation had been lost by the fraud or gross neglect of the director’s, he would have decreed relief. He said it was alleged that bad debts had been created through the default of the directors, “and one special case was mentioned of a loss incurred by an irregular advance to one of the directors, and as to this, if properly alleged and proved, a bill might be maintained.” But he said there was no specific charge of fraud in the bill.
The case of Overend, Gurney & Co. v. Gurney was a bill by the corporation against former directors and the executor of a deceased director. On demurrer by the executor it was held that as regarded any loss beyond the money placed in the directors’ hands the remedy, if any, was at law by an action of negligence, which would not survive against executors; and that as regarded the money placed in the hands of the directors the bill did not show more than imprudence, and having regard to the absence of mala fides and to the powers of the directors, did not make a case of breach of trust against the deceased director.
This case, so far from being an authority against the view we have taken of the case at bar—i. e., that the losses complained of in the petition were injuries to the corporation and not to the individual shareholders, except incidentally through the bank—is in perfect harmony with it. The effort here is not to hold the officers liable beyond the money placed in their hands as such; and as the money placed in their hands *663 was alleged to have been lost by their gross negligence and fraud, there is not that absence of mala fides and breach of trust which alone defeated a recovery against the directors in Overend, Gurney & Co. v. Gurney.
Without elaborating the other cases referred to we have no hesitation in saying they do not, when rightly understood,' militate against the conclusion at which we have arrived, and which is so fully sustained by the authorities cited in its support.
3. The order requiring the plaintiffs to elect whether they would proceed against Ullman for a settlement or against the officers of the corporation to hold them liable for the losses occasioned by their misconduct was erroneous; and although it was not such an order as could be appealed from directly, yet when a final judgment has been rendered and an appeal prosecuted from it the first order can be revised, and the error therein may be corrected.
It is insisted, however, that as the plaintiffs chose to elect and to strike out one cause of action, instead of standing by and allowing their petition to be dismissed, they have waived the error. We do not think so. They had a right to avoid as far as they could the effect of the rule and to bide their time for the correction of the error, and, having come to this court with an appeal from a final judgment in the case, to ask that all the rulings of the court prejudicial to them shall-be reviewed.
Ullman is a necessary party; for whether the right of action against the officers of the company passed to him under the deed of assignment or not, any recovery that may be ultimately had will be assets of the company, and subject to the claims of its creditors.
4. The interest of Thomas Emory’s Sons is adverse to the interest of the corporation. They claim to be creditors or stockholders, or both, while on the facts alleged in the petition *664 they may not be either. They have an apparent interest in the subject-matter of the suit; and if they had not been made parties, it would have been the duty of the court, upon the presentation of a petition stating the facts set forth in their answer and cross-petition, to have required the plaintiffs to make them parties.
Wherefore the judgment dismissing the petition of appellants, and the orders requiring them to elect which one of them would prosecute the action and which cause of action they would strike out, and the order striking Emory’s answer and cross-petition from the files, are reversed, and the cause is remanded with directions to overrule all of said motions and for further proceedings not inconsistent with this opinion.