## Neff v. Gas & Electric Shop et al.

(Decided December 10, 1929.)

J. S. LUSCHER for appellant.

FRED FORCHT, ROBERT F. VAUGHAN and JERRY HOGAN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Gas & Electric Shop is a corporation with a capital stock of $150,000, half of which is preferred and half common. In the month of October, 1926, Charles O. Neff became the owner of 200 shares of the preferred stock, paying $2,000, or par, therefor. The officers of the corporation are H. V. Bomar, president, Harold V. Bomar, Jr., vice-president, and W. W. Thornberry, treasurer, and these three constitute the board of directors.

This action was brought by Neff against the Gas & Electric Shop, the Edison Electric Shop, the Bomar Manufacturing Company, H. V. Bomar, Harold V. Bomar, Jr., and W. W. Thornberry. The substituted petition is in six paragraphs. The first paragraph seeks a recovery in favor of the Gas & Electric Shop against H. V. Bomar for the sum of $66,500, being the aggregate amount of salary paid to him over a number of years, and alleged to have been illegally paid on the ground that the salary for each year was fixed by his vote. In the second paragraph judgment is asked against H. V. Bomar and Harold V. Bomar, Jr., in the sum of $750, alleged to have been paid by the directors to Frank A. Matthews and Harry Harlow without authority. Paragraph 3 sets up a claim of $4,800 against H. V. Bomar, Harold V. Bomar, Jr., and W. W. Thornberry for dividends alleged to have been illegally declared and received by them.

In paragraph 4 a recovery is sought for $7,000 alleged to have been invested in the preferred stock of the Bomar Manufacturing Company in violation of the charter of the Gas & Electric Shop. The purpose of paragraph 5 is to require the three directors to recognize the right of the preferred stockholders to vote and participate in stockholders' meetings to the same extent as common stockholders. Paragraph 6 charges that, shortly after the incorporation of the Gas & Electric Shop, H. V. Bomar as director and president diverted from its capital the sum of $8,000 in purchasing 86½ shares of the capital stock of the Bomar-Summers Hardware Company, and

charges that the diversion of said funds was not authorized by the stockholders of the Gas & Electric Shop, and was in violation of its charter. This paragraph concludes with the prayer that the stock now owned in the Bomar-Summers Hardware Company be disposed of, and the funds realized therefrom be used for legitimate purposes in the Gas & Electric Shop. The defendants H. V. Bomar, Harold V. Bomar, Jr., and W. W. Thornberry moved the court to require plaintiff to elect between the causes of action set up in the third and fourth paragraphs of the substituted petition and those set up in the first, second, fifth, and sixth paragraphs, but the motion was overruled.

The defendant Gas & Electric Shop moved the court to require plaintiff to elect between the causes of action set forth in the fifth and sixth paragraphs of the substituted petition and those set forth in the first, second, and third paragraphs thereof, and this motion was sustained. Thereupon plaintiff dismissed without prejudice paragraphs 5 and 6 of the substituted petition as against the defendant Gas & Electric Shop. The Gas & Electric Shop then filed a demurrer to the first, second, third, and fourth paragraphs of the substituted petition. The demurrer was overruled as to the first paragraph, and sustained as to the second, third, and fourth paragraphs. Plaintiff then filed a pleading amending paragraphs 3 and 4 of the substituted petition. Thereupon the Gas & Electric Shop interposed a demurrer to the amendment and each paragraph thereof. The demurrer was sustained, and, plaintiff having declined to plead further in regard to paragraphs 2, 3 and 4 of the substituted petition and amendments thereto, said paragraphs were dismissed. Plaintiff appeals.

1. A large portion of appellant's brief is taken up with a discussion of the cause of action set out in paragraph 1 of the petition. Inasmuch, however, as the court merely overruled the demurrer to that paragraph, and thus left the question to be disposed of on its merits, the case is one where the ruling was not only in appellant's favor, but was not a final order from which an appeal will lie. It necessarily follows that the propriety of the court's action is not reviewable at this time.

2. The allegations of paragraph 2 are these: H. V. Bomar, Harold V. Bomar and Charles Brown constituted the board of directors of the Gas & Electric Shop, and on

a date unknown to plaintiff, but presumably in the year 1924, passed a resolution directing the officers of the corporations, consisting of H. V. Bomar, president, Harold V. Bomar, vice-president, and Charles Brown, secretary, to pay Frank A. Matthews and Harry Harlow out of the earnings of the corporation $250 each in appreciation of their splendid efforts and loyalty to the concern, and on February 3, 1925, said directors passed a resolution directing said officers to pay out of the earnings of said corporation $250 to Frank Matthews "for his splendid efforts for the year just closed," and pursuant to said resolutions said officers, from the earnings of the corporation, paid said sums to said Matthews and Harlow—"all of which was done by said directors and officers without authority." Rather than to increase salaries in advance so that the increase will be payable, regardless of the prosperity of the corporation, it has become a custom among corporations generally, which believe that their employees should share in their success, to fix salaries at a certain rate, and then at the end of the year pay a bonus to those employees whose fidelity and efficiency have contributed to bring about a successful year. We see no legal objection to this provided the directors do not act corruptly, or the sums paid as a bonus are not so unreasonable in amount or grossly disproportionate to the services rendered as to justify the conclusion that the directors acted in bad faith.

The pleading admits that the payments were made by a resolution of the board of directors in appreciation of the splendid efforts of the employees. It alleges no facts showing that the directors acted corruptly, or that the employees did not render the services for which they were paid, or that the bonuses paid were unreasonable in amount or grossly disproportionate to the services rendered. All that is alleged is that the action of the directors and officers was "without authority." Manifestly, this allegation is a mere conclusion of law without any facts to support it, and the trial court did not err in sustaining the demurrer. Murphy v. Estes, 6 Bush, 532; Farmers' Bank of White Plains v. Bass, 218 Ky. 813, 292 S. W. 489.

3. Paragraph 3 charges in substance that on June 30, 1923, the board of directors, then composed of H. V. Bomar, president; Harold V. Bomar, vice president, and

Charles Brown, secretary, declared and paid a 16 per cent. dividend on all outstanding common stock for the years 1921 and 1922, and the dividends were paid in certain amounts to the defendants—"all of which was done illegally in violation of the charter of said defendant corporation." No facts are pleaded showing that the dividends were paid out of capital, or that the payments were otherwise illegal. As facts and not conclusions of law must be pleaded, it follows that the allegations of paragraph 3 of the substituted petition were insufficient. Farmers' Bank of White Plains v. Bass, supra. In this connection we shall consider the sufficiency of paragraph 3 as amended. In substance, the allegations are these: Under the charter of the Gas & Electric Shop, the preferred stock receives a cumulative dividend of 8 per cent. per annum, and is also entitled, after a like dividend has been paid on the common stock, to share equally in any additional dividend which may be declared.

For the years 1921 and 1922 the earnings of the Gas & Electric Shop were insufficient to pay dividends on the common stock. During the year 1923 the earnings were large, and, after the payment of 8 per cent. on the preferred stock, and 8 per cent. on the common stock, most of which was held by them, the defendants declared a dividend of 16 per cent. on June 30, 1923, to be paid to the common stockholders of record December 31, 1922, for the years 1921 and 1922, for the purpose of fraudulently depriving the preferred stockholders of sharing in said dividends when declared, and the defendant H. V. Bomar was the chief beneficiary of said fraud. Even if this be true, only the rights of those who were preferred stockholders at the time were affected, and none of the others may complain. As appellant did not acquire his preferred stock until the year 1926, he cannot sue for himself, or for the preferred stockholders at that time, as he is not a fair representative of the class affected. It follows that paragraph 3 of the substituted petition as amended did not state a cause of action.

4. The material allegations of paragraph 4 and the amendment thereto are these: The Bomar Manufacturing Company is a corporation engaged in the manufacturing business, and was incorporated by the defendants H. V. Bomar, Harold V. Bomar, and W. W. Thornberry with a capital stock of $1,000. In the year 1928 the capital

stock was increased to $100,000 of which $75,000 was preferred and $25,000 common. The directors and officers of that company are the same as the directors and officers of the Gas & Electric Shop, and they wrongfully diverted $7,000 of the funds of the Gas & Electric Shop in purchasing preferred stock in the Bomar Manufacturing Company. Under its charter the Gas & Electric Shop is "empowered to engage in business for the purpose of trading in all kinds of fixtures and appliances, hardware and hardware specialties," "to buy, sell and deal in gas and electric fixtures and appliances of all kinds, and in such hardware and hardware specialties as its board of directors may from time to time see fit." In addition to these powers, the charter further provides: "It shall have the right also to buy other businesses of a similar nature or any interest or stock in concerns conducting business of a similar nature." The general nature of the business authorized to be carried on by the Bomar Manufacturing Company is "the manufacturing and sale of sheet metal products of every nature, kind and description."

The Gas & Electric Shop is now engaged in the mercantile business of purchasing from the manufacturers or wholesale dealers, and selling to the consumer or user, electric lamps, lights, radios, gas and electric stoves, washing machines, electric irons, and equipment for said articles. The Bomar Manufacturing Company is engaged in the manufacture and finishing of radio cabinets and other articles of manufacture from raw material, and selling said articles to retail and wholesale dealers who sell said articles to the consumer or user, and it does not buy from the manufacturer or wholesale dealer any manufactured article to be sold at retail, but is engaged only in the manufacturing business. The Gas & Electric Shop confines its efforts only to mercantile business, which is not a business of similar nature to the business of the Bomar Manufacturing Company.

The question is whether the purchase by the Gas & Electric Shop of the preferred stock of the Bomar Manufacturing Company is authorized by the former's charter, and this in turn depends on whether the Bomar Manufacturing Company is conducting a business "of a similar nature." It is practically conceded that the Gas & Electric Shop is engaged in retailing appliances that are being manufactured and sold by the Bomar Manufactur-

ing Company. The argument in favor of the cause of action set out in the paragraph is that the businesses conducted by the two concerns are different, in that one is authorized to manufacture and sell, while the other is authorized only to buy and sell. While the word "similar" may mean "identical," or "exactly alike," one of its meanings as given by Webster, and the one usually assigned by the courts is "nearly corresponding;" "resembling in many respects;" "somewhat alike;" "having a general likeness." U. S. v. Komada, 89 C. C. A. 385, 162 F. 465, affirmed in 215 U. S. 392, 30 S. Ct. 136, 54 L. Ed. 249.

The power to buy an interest or stock in concerns conducting business of a similar nature would be of little practical value if it were held that the business should be identical with, or exactly like, that conducted by the purchasing corporation. As we view it, the power was given to enable the Gas & Electric Shop to make a satisfactory business arrangement that would contribute to its own success. Therefore it seems to us that the kind of business as measured by the appliances or articles dealt in, rather than the method of business, is the controlling feature. As before stated, the only difference between the two concerns is that the one buys and sells certain articles and appliances, while the other makes and sells some of the same kind of articles and appliances. It would be taking an extreme view to say that the business of the one is not nearly corresponding to the other, or does not resemble it in many respects, or is not somewhat alike, or does not have a general likeness thereto. We therefore conclude that the business of the Bomar Manufacturing Company is similar to that of the Gas & Electric Shop. It follows that the demurrer to paragraph 4 was properly sustained.

We are asked to determine whether or not the court erred in sustaining the motion to elect. It has long been the rule that an order compelling a plaintiff to elect which of several causes he will prosecute is not an order from which an appeal will lie, but is reviewable only on appeal after a final judgment has been rendered. Jones, Assignee, v. Johnson, etc., 10 Bush, 649. No final judgment having been rendered in this action, the question is not now before us.

Judgment affirmed.