RAFAEL BUSCAGLIA, ETC., Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; BULL INSULAR LINE, INC., Intervener.

No. 202.  Argued February 1, 1949.—Decided March 30, 1949.

*Vicente Géigel Polanco, Attorney General, (José C. Aponte, Acting Attorney General,* on the brief) and *Cándido Ceballos, Assistant Attorney General,* for petitioner. *Charles R. Hartzell* and *José L. Novas* for intervener, plaintiff in the main action.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The only question for decision in this appeal is whether the Tax Court erred in ordering the Treasurer of Puerto

Rico to return $2,819.52 to the Bull Insular Line, Inc., which it had paid as internal revenue on some Towmotor Lift Fork Trucks known as "finger lift trucks," pursuant to subdivision 8 of § 16 of Act No. 85 of 1925 as amended by Act No. 425 of May 14, 1947, which provides as follows:

"8. Other Self-Propelling Vehicles and Apparatus.—On every auto-wagon, truck, hauling autocar, and other similar self-propelling vehicles (by whatever name known), including the vehicles known as 'jeeps', and on every chassis, and autobody for the vehicles herein enumerated, sold, transferred, used in, or introduced into, Puerto Rico, a tax of ten (10) per cent on the selling price in Puerto Rico."

In granting the complaint filed by the taxpayer, the Tax Court made the following findings of fact:

". . . . . . . .

"The 'Towmotor' with 'finger lift' in question, according to the evidence offered by the appellant, which was not contradicted at all by the respondent, is used to lift freight and transport it over short distances, either within the pier or within the ships.

"It is evident that these vehicles are not vehicles ordinarily used for the transportation and hauling of freight and passengers over long distances, at comparatively high speed, such as those to which subdivisions 7 and 8 of section 16 of the Internal Revenue Act necessarily refer. The 'Towmotor', it was proved, is an apparatus especially designed to facilitate the manipulation of freight, on smooth and even floors for short distances and at a slow speed. The Legislature could not have meant to include them under the designation made in the aforesaid subdivisions 7 and 8 of section 16 of Act No. 85 of 1925, supra. . . ."

According to its own decision, the Tax Court found that said apparatus is self-propelling, transports goods from one place to another, and is at the same time designed to lift the goods to the place where it is stowed.

■■ Although it is true that said apparatus is not an auto-wagon, nor a truck, nor a hauling autocar, yet it is

similar to those mentioned, inasmuch as it is self-propelling, its main characteristic being the transportation of goods from one place to another, with the advantage that because of its mechanism, it can lift the goods transported, facilitating its stowing.

It was not the legislative intent, in using the phrase "other similar self-propelling vehicles," that only vehicles exactly alike or identical to those specified in the aforesaid subdivision should be considered within the designation made therein, for then the phrase would have no value. See *Greenleaf* v. *Goodrich*, 101 U. S. 278 and *Neff* v. *Gas & Electric Shop*, 22 S.W. 2d 265. The phrase was used to indicate likeness or resemblance and the reason is obvious. Every day new self-propelling apparatuses are being invented and new mechanical appliances are being attached to those already in existence. This renders it impossible to make a specific enumeration of all of them and the lawmaker, in order to meet this situation, used the words "and other similar self-propelling vehicles (by whatever name known)" thereby preventing those new apparatuses from being exempt.

We do not believe that it was the legislative intent to restrict the imposition of the revenue exclusively on those vehicles or apparatuses ordinarily used for the transportation and hauling of freight and passengers "over a long distance and at a comparatively high speed" as held by the lower court. The fact is that the "finger lift truck" or Towmotor Lift Fork Truck, is by its name "a tow or hauling motor", a "truck", self-propelling, hauls merchandise from one place to another and lifts it for the purpose of stowing it. According to exhibits 1 and 2 of petitioner, illustrating the models and specifications of the Towmotor Lift Fork Truck and of the Towmotor Tractor, the difference between them consists mainly in that the Towmotor Tractor does not have in the front the lift fork appliance and that the front wheels are small while those of the Towmotor Lift Fork

Truck are large. The specifications, with slight variations, are the same and as to the speed at which they can run, the limit of the Towmotor Lift Fork Truck is 7 miles per hour while that of the Towmotor Tractor is 10 miles per hour. The distance that the Towmotor Lift Fork Truck can run and the speed at which it can do it, do not make it dissimilar, in our opinion, to the vehicles enumerated in the Act, to the extent of exempting them from duty.

The cases of *Bull Insular Line* v. *Sancho Bonet, Treas.* 53 P.R.R. 823; *Serrallés* v. *Treasurer*, 55 P.R.R. 136; *Serrallés* v. *Sancho, Treas.*, 57 P.R.R. 764, are not applicable to the instant case as Subdivision 8 of § 16, effective at that time, did not contain the phrase "and other similar self-propelling vehicles." Neither is *P. R. Iron Works* v. *Buscaglia, Treas.*, 62 P.R.R. 839, for the "semi-trailers" and road graders were so designed "as not to be capable of being converted into a self-propelling vehicle and it can be moved only by the use of a traction force." However, *Central Aguirre Sugar Co.* v. *Sancho Bonet, Treas.*, 55 P.R.R. 148 is in point. There, although the statute did not contain the aforesaid phrase, we held that a "Fowler Gyrotiller" was to all practical purposes a tractor within the meaning of that term, as used in subdivision 8 of § 16 of the Internal Revenue Act. See also *Russell & Co.* v. *Domenech, Treas.*, 50 P.R.R. 50, affirmed in *Russell & Co.* v. *Sancho*, 92 F. 2d 821. Our decision in *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870, 877, 898 where the scope of the rule of *ejusdem generis* and the related doctrine of *noscitur a sociis* were construed, does not militate against our conclusion in the present case. On the contrary, it upholds it.

The decision of the lower court will be reversed and another rendered dismissing the complaint filed by the Bull Insular Line Inc.

Mr. Justice Negrón Fernández did not participate herein.